IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                CIV 09-1201 JAP/KBM

COPAR PUMICE COMPANY, INC.,
KELLY ARMSTRONG, RICHARD P. COOK,
SHIRLEY A. COOK, and DEBBIE CANTRUP,

        Defendants.

## ORDER ON PENDING DISCOVERY ISSUES

THIS MATTER is before the Court on all unresolved discovery issues, as set forth in the Government's Notice of Issues *(Doc. 163)* and argued before the Court on April 19, 2012. I will address each issue in turn.

**I.**     **Defendants' Responses to Discovery Concerning Their Business Interests and Personal Financial Information**

    A.     <u>Businesses (Other than Copar) In Which Defendants Were Involved</u>

These matters were raised in the Government's First Motion to Compel [Doc. 55], the Government's Second Motion to Compel [Doc. 86], and the Government's Motion to Enforce the Court's October 26, 2011 Order [Doc. 74]. At issue are the Government's Interrogatory Nos. 4-8 and Request for Production ("RFP") Nos. 27-31.

Defendants' objections to Interrogatory Nos. 4-8 are overruled, and Defendants are ordered to respond fully without further objection. With regard to RFP Nos. 27-31, Defendants agree to be bound by the responses of Defendants Richard P. Cook, Shirley A. Cook, and Debbie

Cantrup, each of whom have said that they have no responsive documents. To the extent these responses indicate they are "subject to the general objections," the Court finds these objections lack merit and are overruled. *See* Fed. R. Civ. P. 33(b)(1) (directing parties to separately answer each interrogatory), Fed. R. Civ. P. 33(b)(4) (requiring objections to interrogatories to be stated with specificity). *See also Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 303 (D.Kan. 1996) (noting that general objections are "disfavored" and finding the requirements of Rule 33 applicable to Rule 34 as well).

The Court will consider the adequacy of Defendant Kelly Armstrong's responses to RFP Nos. 27-31 in light of the volume ("a garage full," according to counsel for Defendants) of responsive documents, and issue a written ruling within the next week. The parties are encouraged to reach an agreement, if possible, on this matter before the Court rules.

B.   <u>Claimants' Personal Financial Information</u>

The Government seeks to compel responses to its RFP Nos. 35-38, as argued in its First Motion to Compel [Doc. 55], Second Motion to Compel [Doc. 86], and Motion to Enforce the Court's October 26, 2011 Order [Doc. 74].

RFP No. 35 requests the Claimants' federal and state tax returns from 2002-present. I find that RFP No. 35 seeks relevant information. Defendants' concerns about the personal nature of this information can be alleviated with a standard confidentiality order. RFP Nos. 36-38, however, seek potentially every financial document in the possession of the Individual Defendants. Counsel in this matter appear to have made good progress toward reaching a compromise as to RFP Nos. 36-38, and I will therefore grant them one week, until the close of business Thursday, April 26, 2012, to notify the Court that they have reached an agreement limiting these Requests. In the event the parties are unable to compromise, I will enter an

appropriate order.

II. **Defendants' Responses to Discovery Concerning Crushing of Pumice, Sale of Pumice Outside the Laundry Industry, and Removal and Sale of Undersized Pumice.**

The Government seeks to compel complete responses to discovery concerning pumice in its First Motion to Compel [Doc. 55], Second Motion to Compel [Doc. 86], and Motion to Enforce [Doc. 129]. At particular issue are Defendants' responses to Interrogatory Nos. 15-16 (directed to Copar) and 14-15 (directed to Claimants) concerning the crushing of pumice. Also at issue are Interrogatory Nos. 17-18 (directed to Copar) and 16-17 (directed to Claimants) concerning the sale of pumice outside of the laundry industry. Finally, Defendants asked for rulings on the adequacy of Defendants' responses to Interrogatory Nos. 13-14, 26-28 (directed to Copar) and 18 (directed to Claimants), which concern removal and sale of undersized pumice.

Counsel for Defendants confirmed at the April 19, 2012 hearing that Copar, Mr. Cook, and Ms. Armstrong were each aware that crushing of pumice, sized 3/4" and over, occurred from the time the El Cajete mine was opened in 1998. The Government is satisfied with Copar's responses to pumice-related discovery and with the responses of Claimants Richard Cook, Shirley Cook, and Debbie Cantrup. Defendants are directed to supplement all of the pumice-related interrogatories directed to Kelly Armstrong, within two weeks, or by Thursday, May 3, 2012.

III. **Defendants' Responses to RFP Nos. 5, 16, 23, 24, 26**

The Government seeks to compel adequate responses to these requests in its First Motion to Compel [Doc. 55] and Second Motion to Compel [Doc. 86]. Defendants' attorney agrees to supplement his responses to all of the above-listed requests, clarifying which requests have been fully responded to and whether responsive documents have been withheld as to any of these

requests.

RFP No. 24 seeks all documents the Claimants have received from Copar. The Government has clarified that it is satisfied with the responses from Richard Cook, Shirley Cook, and Debbie Cantrup; however, it would like a complete response from Kelly Armstrong. Defendant Armstrong's counsel objects on the grounds that the requested production is overly burdensome and irrelevant. The Court will require Defendant Armstrong to respond by explaining the manner in which Copar paid her. To the extent she received a regular salary on a regular basis, this explanation is sufficient. As to any irregular payments, however, including but not limited to bonuses and expense reimbursements, Defendant Armstrong must fully respond and provide the requested documentation.

RFP No. 26 seeks documents related to any free goods or services traded or exchanged among the Defendants. The Court notes Defendants' objection on grounds of burden given that Defendants are family members who frequently help one another. The Government, however, has a right to seek information related to more unusual or atypical exchanges, such as free office space or exchanges with value above a certain dollar amount. The Court will allow the parties one week in which to reach an agreement as to the scope of RFP No. 26. In the event the parties have not notified the Court of any compromise by the close of business on Thursday, April 26, 2012, the Court will issue an appropriate order.

**IV. Defendants' Motion for Protective Order [Doc. 87]**

The Government served its first set of discovery upon Defendants over one year ago, on February 11, 2011. *See Doc. 47*. Defendants responded, after receiving multiple extensions of time, on April 22, 2011. *See Doc. 55* at 14. The Government's attorneys wrote to counsel for Defendants on May 26, 2011, noting Defendants' objections on grounds of confidentiality, and

specifically asking Defendants to "either move for a protective order ... or provide additional specific information ... such that the United States can evaluate whether a protective order would be appropriate." *Doc. 55-3* at 5.  Inexplicably, Defendants did not seek a protective order as to the allegedly confidential business information until December 22, 2011.  *See Doc. 87*.

Based on the facts before the Court, I find that Defendants have waived any objection to producing the allegedly confidential business documents.  The time for filing a motion for protective order is on or before the date that discovery is due.  *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation*, 669 F.2d 620, 622, n.2 (10th Cir. 1982) (holding that "a motion under [rule] 26(c) for protection ... is timely filed if made before the date set for production"); *Velasquez v. Frontier Medical, Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005) (same).  There is no good cause for Defendants' failure to file a timely motion for protective order in this case.  Defendants' failure to act promptly has caused significant delay, as evidenced by the Court's continuing consideration of the adequacy of Defendants' responses to discovery served over a year ago.

Further, Defendants have not demonstrated good cause for issuance of a protective order. The damages they allege in the event that Copar's allegedly confidential documents are disclosed are speculative.  Not only are the documents at issue old, but it is undisputed that the pumice mining business has changed dramatically over the years.  I will therefore deny Defendants' Motion for Protective Order [Doc. 87].  The parties are reminded, however, of their obligations to redact personal confidential information when filing documents with the Court.

**V.     Defendants' Motion to Quash Subpoenas [Doc. 112] and Defendants' Second Motion for Protective Order [Doc. 132] Concerning Attorney-Client Privilege and the Waiver Thereof**

Both of the motions at issue concern the effect of Defendants' affirmative defense of

good-faith reliance upon the advice of counsel.  The Government argues that Defendants have waived the attorney-client privilege by asserting the reliance defense.  As such, the Government sought information and documents concerning "all legal advice provided to Defendants regarding the legality of the mining, transportation, processing, marketing, trade, gift or sale of pumice at or taken from Brown Placer Mining Claims 9-12."  *See Doc. 55-1* at 11; *Doc. 55-2* at 15.  Defendants objected to the requests on grounds of privilege, but did not provide a privilege log for several months.  *See id.; Doc. 61* at 16-18.  The Government therefore argued that Defendants waived the privilege both by failing to provide a privilege log and by relying on the advice-of-counsel defense.  *See Doc. 67* at 17-18.  Both sides argued the matter of waiver at the Court's October 26, 2011 hearing, and the Court ruled as follows:

> As to the request for production of communications with attorneys in seeking legal advice on specified subjects, the request seeks evidence relevant to Defendants' defense of good faith reliance on the advice of counsel.  As such, Defendants have waived the privilege and must produce those limited communications from April, 2002 to the present.

*Doc. 74* at 1-2.  Defendants did not appeal this ruling to the District Court Judge assigned to this matter, the Honorable James A. Parker.  *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy.  A party may not assign as error a defect in the order not timely objected to.").

When Defendants failed to produce documents responsive to the Government's discovery requests regarding attorney advice as ordered, the Government ultimately served Defendant Copar's attorneys with subpoenas.  *See Doc. 105*.  Defendants then filed the Motion to Quash [Doc. 112], followed shortly thereafter by a Second Motion for Protective Order [Doc. 132], arguing for the first time that the scope of the good-faith defense and waiver of privilege was

limited to "whether the Forest Service could lawfully restrict the 'end use' of locatable pumice solely to the laundry industry." *See* Doc. 112 at 2.

In federal court, privileges are generally governed by federal common law. *See* Fed. R. Evid. 501 (providing that federal common law governs unless the Constitution, a federal statute, or Supreme Court rules provide otherwise). Rule 501 also provides, however, that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id.* Based upon this language, Defendants contend that New Mexico law concerning privilege applies. *See* Doc. 132 at 3. Indeed, the claims in this lawsuit—trespass, conversion, and unjust enrichment—arise under state law. *See* Doc. 22.

Upon examination of the notes regarding enactment of Rule 501, the matter is more complex. Apparently, the House of Representatives bill concerning Rule 501 indicates that state law regarding privilege would apply where State law supplies the rule of decision. *See* Fed. R. Evid. 501, 1974 Enactment notes. The Senate bill, however, provides that state law regarding privilege would apply in federal diversity cases. *See id.* Given that the present case is not a diversity case, the Senate version of Rule 501 would apply federal common law to determine the privilege question, while the House version would apply New Mexico law. *See id.*

The Federal Rules of Evidence resolve this conflict by providing that "[i]n nondiversity jurisdiction civil cases, federal privilege law will generally apply." Fed. R. Evid. 501, 1974 Enactment notes. The Rules Committee cites Justice Jackson,

> A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.

*Id.* (quoting *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 471 (1942) (Jackson, J.,

7

concurring)).  *See also Vondrak v. City of Las Cruces*, 760 F.Supp.2d 1170, 1177 (D.N.M. 2009) (holding that where jurisdiction is based on federal question rather than diversity, and there is supplemental jurisdiction over state law claims, federal law should govern privilege, even as to state law claims).

The Tenth Circuit has noted there are three approaches to determining whether a litigant has waived the attorney-client privilege.  *See Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1999).  But the Tenth Circuit has not yet adopted one of these approaches.  *See Anchondo v. Anderson, Crenshaw & Assocs.*, 256 F.R.D. 661, 670 (D.N.M. 2009).  Magistrate Judge William P. Lynch of this District recently found that the Tenth Circuit would most likely apply the majority approach articulated in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).  *See Anchondo*, 256 F.R.D. at 671.  The *Hearn* approach has three elements:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn*, 68 F.R.D. at 581.

Defendants in the present case have asserted the privilege in the context of an affirmative defense, specifically, Defendants contend that although their actions may have been illegal, the actions were taken in good faith, based upon the advice of their legal counsel that they were at all times acting legally.  I find this is sufficient to satisfy the first *Hearn* element.  Through Defendants' affirmative act of asserting the defense, I find that the particular advice given by Defendants' counsel is at issue.  Finally, I find that denying the Government access to the Defendants' attorney's advice would deprive the Government of information necessary to

counter Defendants' affirmative defense. All three *Hearn* elements are met; therefore, under federal common law, specifically, the *Hearn* test, Defendants have waived the attorney-client privilege concerning "all legal advice provided to Defendants regarding the legality of the mining, transportation, processing, marketing, trade, gift or sale of pumice at or taken from Brown Placer Mining Claims 9-12."

Under New Mexico law, a waiver of the attorney-client privilege is recognized "only where a party 'seeks to limit its liability by describing [his lawyer's] advice and by asserting that he relied on that advice.'" *Pub. Serv. Co. of New Mexico v. Lyons*, 10 P.3d 166, 173 (N.M.Ct.App. 2000) (quoting *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3rd Cir. 1994)). New Mexico "therefore side[s] with the minority of jurisdictions that require offensive or direct use of privileged materials before the party will be deemed to have waived its attorney-client privileges." *Lyons*, 10 P.3d at 173.

As applied to the present case, the result is no different under New Mexico law as under federal law. Again, Defendants have affirmatively asserted the affirmative defense of good-faith reliance upon the advice of counsel. In so doing, they have described their counsel's advice (i.e., that Defendants' actions were within the letter of the law) and asserted reliance thereon. Consequently, whether federal law or New Mexico law is applied, Defendants have waived the attorney-client privilege as to "all legal advice provided to Defendants regarding the legality of the mining, transportation, processing, marketing, trade, gift or sale of pumice at or taken from Brown Placer Mining Claims 9-12." Accordingly, I will deny Defendants' Motion for Protective Order [Doc. 132].

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Government's First Motion to Compel [Doc. 55], Second Motion to Compel [Doc. 86], and Motion to Enforce [Doc. 74] are granted in part as follows:

    a. Defendants' objections to Interrogatory Nos. 4-8 are overruled, and Defendants are ordered to respond fully without further objection by Thursday, May 13, 2012;

    b. Defendants' objections to RFP No. 35 are overruled. Defendants are to ordered to respond fully, subject to a standard agreed-upon confidentiality order, without further objection by Thursday, May 13, 2012;

    c. As the Government is satisfied with the other Defendants' responses to the pumice-related discovery, only Defendant Kelly Armstrong is ordered to supplement her responses to Interrogatory Nos. 14-18 and respond fully by Thursday, May 13, 2012;

    d. By Thursday, May 13, 2012, Defendants will supplement responses to RFP Nos. 5, 16, 23, 24, and 26, clarifying those to which they have fully responded and whether any responsive documents have been withheld and on what basis; and

    e. Defendant Kelly Armstrong will respond to RFP No. 24 by first explaining the manner in which she was paid by Copar, including whether she

received her salary on a regular, consistent basis and in regular, consistent amounts. As to any irregular payments she might have received, including but not limited to bonuses and expense reimbursement, Defendant Armstrong must fully respond by Thursday, May 13, 2012.

    2. Defendants' Motion for Protective Order [Doc. 87] is denied.

    3. Defendants Motion to Quash Subpoenas [Doc. 112] is denied.

    4. Defendants' Second Motion for Protective Order [Doc. 132] is denied.

    5. The Government's request for attorneys' fees will be taken under advisement.

    It is so ordered.

_____
UNITED STATES MAGISTRATE JUDGE