**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**THE UNITED STATES OF AMERICA,**

     **Plaintiff,**

**vs.**                                  **Civ. No.  09-1201 JAP/KBM**

**COPAR PUMICE COMPANY, INC.,**
**KELLY ARMSTRONG, RICHARD P. COOK,**
**SHIRLEY A. COOK, and DEBBIE CANTRUP,**

     **Defendants.**

**MEMORANDUM OPINION AND ORDER OVERRULING**
**OBJECTIONS TO MAGISTRATE'S MAY 11, 2012 ORDER [DOC. 191]**
**(Personal Financial Statements, Unrelated Business Transactions) (Doc. No. 195)**

     In OBJECTIONS TO MAGISTRATE'S MAY 11, 2012 ORDER [DOC. 191] (Personal

Financial Statements, Unrelated Business Transactions) (Doc. No. 195) (Objections), Defendants

object to the May 11, 2012 ORDER (Doc. No. 191) (May 11, 2012 Order) entered by Chief

Magistrate Judge Karen B. Molzen.[1]

     Specifically, Defendants object to the May 11, 2012 Order to the extent that Magistrate

Judge Molzen ordered Defendants Kelly Armstrong, Richard P. Cook, Shirley A. Cook, and

Debbie Cantrup (Individual Defendants) to produce "annual financial statements from 2002-

2011 identifying all assets and liabilities exceeding a value of $10,000."  (May 11, 2012 Order at

3-4.)  Magistrate Judge Molzen further ordered, the Individual Defendants to

---

[1] In ruling on the Objections, the Court has also considered, THE UNITED STATES'
RESPONSE TO DEFENDANTS' MAY 18, 2012 OBJECTIONS TO THE CHIEF
MAGISTRATE JUDGE'S MAY 11, 2012 ORDER RE PERSONAL FINANCIAL
STATEMENTS [DOC. 195] filed on June 4, 2012 (Response).

> provide a description sufficient to identify the asset or liability (e.g., account number, VIN number, etc.) and describe the method used to value it (e.g., market value, purchase price, etc.). Each entry must also include a valuation; it is not sufficient to state simply that it exceeds $10,000. Defendants will also indicate the date on which the asset/liability was acquired and the person or other source from whom it was obtained. The entries shall not be limited to assets and/or liabilities related to Copar. The Court anticipates that further questions may arise as the Defendants complete the financial statements, and the parties are strongly encouraged to work together to reach an agreement without further intervention of the Court.

(*Id.* at 4.) In this Memorandum Opinion and Order, these documents will be referred to as the Personal Financial Statements.

Defendants also object to Magistrate Judge Molzen's rulings requiring Defendants to answer Request For Production (RFP) 31. On May 2, 2012, Magistrate Judge Molzen entered an ORDER ON UNRESOLVED DISCOVERY ISSUES (Doc. No. 172). Defendants object to the rulings in both the May 2, 2012 Order and in the May 11, 2012 Order with respect to RFP 31.

In the May 2, 2012 Order, Magistrate Judge Molzen ordered the following:

> Request for Production No. 31 will be limited as suggested by the Government, and Defendant Armstrong will be required to produce the following documents:
> (1) All that mention, discuss, or relate to Copar or any of its employees;
> (2) All that mention, discuss, or relate to any transaction in which Copar or any of its employees, owners, officers, or directors were involved, irrespective of whether any money exchanged hands;
> (3) All that show the role each Defendant had within the entity, including as employee, owner, officer, or director; and
> (4) All that show any payments or good or services provided to any Defendant who has not been listed in response to Interrogatory No. 4 as an owner, officer, or director of the entity.

(May 2, 2012 Order at 2.)

In the May 11, 2012 Order, Magistrate Judge Molzen added a new category of documents required to be produced by Defendants Armstrong and Richard Cook, who were the only Individual Defendants with possession of certain documents regarding the related entities:

Defendants Armstrong and Richard Cook are therefore ordered to provide the following prefatory information:
(1) Identify each entity in which any of the Individual Defendants have (in whole or in part) owned, controlled, managed, or been employed by since 2002;
(2) Describe the purpose and business activities of each such entity; and
(3) Provide a list of each entity's directors and officers.

(May 11, 2012 Order at 4.)

In addition, Magistrate Judge Molzen required Defendants Armstrong and Richard Cook to produce documents in response to RFP 31 as to the entities listed in response to the three categories above:

(1) Those that mention, discuss, or relate to Copar;
(2) Those that mention, discuss, or relate to any financial transaction in which Copar or any of its owners, officers, or directors were involved;
(3) Those that show the role of each Individual Defendant within the entity, including as employee, owner, officer, or director; and
(4) Those that show any payments, goods, or services provided to any Individual Defendant not listed in response to Interrogatory No. 4 as an owner, officer, or director of the entity.

(*Id.* at 5.)  These documents will be referred to as the Related Business Entity Documents.

In the Objections, Defendants argue that the Court should set aside the May 2, 2012 Order and the May 11, 2012 Order as clearly erroneous or contrary to law under Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A).  The United States asserts that the Personal Financial Statements and the Related Business Entity Documents are discoverable because they will contain relevant evidence or would lead to relevant evidence regarding a "tangled web" of financial interrelationships between several business entities, the Individual Defendants, and Copar.  The United States maintains that this information is relevant to show that the Individual Defendants were unjustly enriched by Copar's allegedly illegal mining, processing, and marketing of common variety pumice.  Because Defendants have failed to demonstrate good cause to set aside the May 2, 2012 Order and the May 11, 2012 Order, the Court will overrule

3

the Objections.

I. Background

This lawsuit involves the operation of a pumice mine located in the Jemez Ranger District in the Santa Fe National Forest.  The Individual Defendants owned the Brown Pacer Mining Claims 9-12 and leased the mining rights to Copar in September 1988.  Copar is a closely-held corporation owned by Richard Cook's three daughters, Debbie Cantrup, Kelly Armstrong and Katherine Fishman.[2]  In 1997, the Santa Fe National Forest approved a Plan of Operations for a term of ten years allowing Copar to mine and remove locatable pumice from Claims 9-12.  This mining operation became known as El Cajete Mine.[3]

In the Amended Complaint (Doc. No. 22), the United States alleges that "Defendants were authorized to extract and remove only locatable pumice from [El Cajete Mine] for sale to the stonewash laundry industry."[4]  (Amended Compl. ¶ 49.)  The United States alleges that Defendants were prohibited from extracting "common variety" pumice from El Cajete Mine under federal mining laws, including the Jemez National Recreation Area Act of 1993 (JNRAA),

---

[2] It is unclear whether Ms. Cantrup, Ms. Armstrong and Ms. Fishman own equal shares in Copar; and if not, it is unclear what percentage ownership each has in Copar. It is undisputed, however, that Defendant Cantrup and Defendant Armstrong own a percentage of Copar.

[3] El Cajete Mine was an open pit pumice mine and pumice screening plant. *See Copar Pumice Co., Inc. v. Bosworth*, 502 F. Supp. 2d 1200, 1203 (D. N.M. 2007) (upholding administrative decision that affirmed notice of noncompliance issued by Forest Service to Copar regarding its operation of El Cajete Mine).

[4] In 1994, the Department of the Interior (DOI)  determined that Claims 9-12 of the Brown Placer Mining Claims were validly located for stonewash pumice. The DOI further determined that the pumice from Claims 9-12 was locatable for the stonewash laundry industry only if the pumice was 3/4 of an inch or larger (+3/4" pumice).

and under a 2002 Settlement Agreement between the United States and Copar.[5] (*Id*. ¶ 50.)  The United States contends that from April 2002 through February 2009 Defendants unlawfully removed, processed, and sold pumice for common variety purposes from El Cajete Mine. Specifically, the United States claims that 1) Defendants unlawfully trespassed on federal land to extract pumice for common variety purposes; 2) Defendants unlawfully converted federal property by removing pumice for common variety purposes; and 3) Defendants were unjustly enriched from the illegal mining and sale of common variety pumice.[6]  The United States seeks a declaratory judgment, compensatory damages, and permanent injunctive relief.  In a previous MEMORANDUM OPINION AND ORDER (Doc. No. 43), the Court granted partial summary judgment in favor of Defendants holding that the United States is precluded from asserting the trespass, conversion, and unjust enrichment claims against Defendants for any mining activity prior to April 3, 2006.

On February 11, 2011, the United States served its First Set of Interrogatories and Requests for Production on all Defendants seeking information related to Copar's allegedly unlawful mining activities, the Individual Defendants' alleged involvement in Copar's operations, and also information targeted at revealing any profit allegedly obtained by the Individual Defendants either directly or indirectly from Copar's El Cajete Mine operations.

---

[5] The Environmental Impact Statement, issued as part of the Plan of Operation, required Copar to stockpile common variety pumice and use it for reclamation of the area.  The +3/4" pumice was sent out for processing at Copar's plants in San Ysidro and Espanola, New Mexico.

[6] The United States contends that Defendants violated several statutes and regulations: 1) the National Forest Organic Administration Act of 1897, 16 U.S.C. § 551; 2) the Surface Resources Act of 1955 (as amended), 30 U.S.C. §§ 611 et seq.; 3) the Common Varieties Act of 1947 (as amended), 30 U.S.C. §§ 601 et seq.; 4) the General Mining Law of 1872, 30 U.S.C. §§ 21-54; 5) the JNRAA, 16 U.S.C. §§ 460jjj et seq.; and 6) Forest Service regulations, 36 C.F.R. 228, Subpart C. (Amended Compl. ¶ 3.)

After the parties conferred on disputes related to discovery, and after motions to compel and motions for protective orders, Magistrate Judge Molzen held a hearing on all disputed discovery issues on April 19, 2012 and issued a written ruling on discovery on April 23, 2012 (Doc. No. 167).  The April 23, 2012 Order, however, did not address Defendants' objections to producing the Personal Financial Statements or the Related Business Entity Documents.  On May 2, 2012, Magistrate Judge Molzen ruled on several requests for production involving this information.  After a second hearing on May 7, 2012, Magistrate Judge Molzen issued the May 11, 2012 Order further defining the information that the Individual Defendants were required to produce.

At the April 19, 2012 hearing, the United States offered to limit the Personal Financial Statements to only the assets and liabilities that have a value of more than $10,000.  Magistrate Judge Molzen incorporated this limit in the May 2, 2012 Order and ordered Defendants to respond to RFPs 36-38 with "all documents referencing property with a value exceeding $10,000" and to provide the documents on or before May 14, 2012. (*Id.* at 2-3.)  In the May 11, 2012 Order, Magistrate Judge Molzen required the Individual Defendants to provide "annual financial statements from 2002 to 2011 identifying all assets and liabilities exceeding a value of $10,000."  (*Id.* at 4.)

At the May 7, 2012 hearing, the United States pointed out to Magistrate Judge Molzen that Defendants had not moved for a protective order regarding their personal financial information, however, Magistrate Judge Molzen stated, ". . . that was my impression, is that there would be one [protective order].  And if there is not going to be one, then there–there's a more legitimate concern, I think, with regard to the chance of the potential sharing of that private information with the general public, and it is–that's–I have authorized quite a bit."  Transcript of

6

Proceedings on May 7, 2012 (Doc. No. 193) at 25:25-26:6.  During the ensuing discussion at the May 7, 2012 hearing, the United States agreed that Defendants' Personal Financial Statements would be subject to a protective order to address concerns with confidentiality.  *See* Transcript of Proceedings on May 7, 2012 (Doc. No. 193) at 26:9-11 (stating "Your Honor, if your Honor deems a protective order necessary, [the United States] certainly would be agreeable to one.").  Thus, the Court finds that a protective order should be entered protecting the confidentiality of the Individual Defendants' Personal Financial Statements.

II. Standard of Review

Fed. R. Civ. P. 72(a) allows a district judge to consider timely objections and modify or set aside any part of a magistrate judge's decision on a non-dispositive issue that is clearly erroneous or is contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A). *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461-62 (10th Cir. 1988) (cited in *Comeau v. Rupp*, 810 F. Supp. 1127, 1167 (D. Kan. 1992)).  "The clearly erroneous standard is intended to give the magistrate a free hand in managing discovery issues."  *Center For Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1158 (D. N.M. 2004) (citing, *Harrington v. City of Albuquerque*, 2004 WL 1149494 , *1 (D. N.M. May 11, 2004)).  Under this standard, a district judge can set aside a magistrate judge's ruling only if the district judge has "the definite and firm conviction that a mistake has been committed." *Id.* at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  The Seventh Circuit Court of Appeals has stated that to be clearly erroneous, a decision must "strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."  *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).  By contrast, the "contrary to law" standard permits "plenary review as to matters of law." *Sprint Communications Co. L.P.*

7

*v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citing 12 Charles Alan

Wright, Arthur R. Miller, Richard L. Cooper, Federal Practice & Procedure, § 3069, at 355 (2d

ed.1997) and *Weekoty v. United States*, 30 F. Supp. 2d 1343, 1344 (D. N.M. 1998) (Hansen, J.)).

   Under Rule 26 (b)(1), information is discoverable when it is relevant or reasonably could

lead to relevant information:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

   Discovery is further limited under Rule 26(b)(2):

> (2) Limitations on Frequency and Extent.
>    . . .
>
>> (c) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>>
>>> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>>
>>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>>
>>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

III.  Discussion

    A.  Personal Financial Statements

Defendants argue that Magistrate Judge Molzen erred because she did not indicate why the Individual Defendants' Personal Financial Information would be relevant to the United States' claims for trespass, conversion, or unjust enrichment.  Defendants maintain that Copar leased all rights to mine pumice from El Cajete but that the Individual Defendants never personally conducted any activities on forest service land and they never received any compensation from Copar other than Defendant Armstrong's salary as an employee of Copar. Defendants contend that information regarding their assets and liabilities is irrelevant to prove whether they trespassed onto federal land, whether they then converted the pumice for their own use, or whether they have been unjustly enriched by the Copar's allegedly illegal mining activities. Defendants also contend that the production of Personal Financial Statements would require them to expose private and confidential information to the public.

    The United States maintains that it may discover this information to test the veracity of the Individual Defendants assertion that they received no compensation or other monies from Copar.  The United States asserts that the information related to the Individual Defendants' assets and liabilities will reveal whether they profited indirectly from Copar's illegal mining activities.

    The Court finds no factual or legal error in Magistrate Judge Molzen's ruling that Defendants must provide Personal Financial Statements listing all assets and liabilities with a value greater than $10,000.  The claim asserted by the United States against the Individual Defendants, particularly the claim that they were unjustly enriched by Copar's mining activities, makes this information particularly relevant and discoverable under Rule 26(b)(1), and the Court

9

will overrule this objection.

### B.  Related Business Entity Documents

The United States contends that these documents will reveal whether the Individual Defendants received monies, goods, or services from Copar indirectly through other business entities owned or controlled by the Individual Defendants.  The United States maintains that Defendants never have fully revealed all of the entities owned and controlled by one or more of the Defendants.  Defendants, however, have provided information regarding several entities owned or controlled by them and Defendants have produced some information revealing transactions between Copar and these entities.[7]  For example, documents provided already to the United States reveal that Copar houses its offices in a building owned by Cooks Home Center, LLC, but Copar does not pay rent.  Cooks Home Center, LLC is owned by Defendant Richard Cook.  The United States asserts that it has learned from information already obtained that several "accounts, notes, real estate contracts and mortgages receivables" exist between Defendant Armstrong and Cook's Home Center, LLC.  Discovery reveals that Richard and Shirley Cook have accounts and notes receivable from El Llano Construction, DAK Partnership, Cook Partnership, Espanola Transit Mix, and Rico Construction.  Each of these entities is owned and controlled by one or more of the Individual Defendants. According to the United States, even the incomplete information it has received, reveals that each of these entities has engaged in substantial financial transactions with Copar.

Defendants argue that Magistrate Judge Molzen is allowing the United States to obtain information that is entirely too broad, intrusive, and burdensome.  Defendants state that

---

[7] In the Objections, Defendants state that they have revealed a total of 55 entities owned or controlled by one or more of the Individual Defendants. (Objection at 9.)

complying with the May 2, 2012 Order and the May 11, 2012 Order would require the production of documents with an attenuated or nonexistent relationship to the United States' claims.  As an example, Defendants assert that Defendant Armstrong is an officer of Cook's Home Center, LLC, which operates a hardware store, and Defendant Armstrong is a director of Valley National Bank.  The Individual Defendants buy supplies from the hardware store and they also have personal checking and savings accounts and personal loans with Valley National Bank.  According to Defendants, the May 2, 2012 Order and the May 11, 2012 Order will require Defendant Armstrong to search and produce receipts regarding ordinary sales transactions between each of the Individual Defendants and the hardware store, but that these types of transactions do not logically pertain to whether the Individual Defendants were unjustly enriched by Copar's allegedly illegal mining profits.  In addition, Defendants argue that producing these types of records is oppressive and unnecessary because Copar has already produced its general ledgers, which provide details of all of Copar's financial activity during the relevant time period.  Defendants maintain that Copar has offered to provide all of the backup documentation to the general ledgers so the United States can confirm the payments.  According to Defendants, the production of documents pertaining to the Individual Defendants' personal transactions with Cook's Home Center or with any of the other entities is "wholly irrelevant and constitutes an unwarranted fishing expedition and an abuse of discretion."  (Objection at 12.)  In sum, Defendants contend that Magistrate Judge Molzen's order requiring them to produce the Related Business Entity Documents is erroneous and contrary to law.

The United States counters that from information acquired in discovery, it has determined that, despite Defendants' protestations, they did not receive any monies from Copar.  The United States gives as an example Defendants' tax returns produced in discovery.  In 2003,

11

the Individual Defendants declared pumice royalty income even though they declared they

received no compensation from Copar in their answers to interrogatories .  In addition, Copar's

general ledgers list "notes payable" dated March 31, 2003 to the Individual Defendants, and

Copar reported on its tax return that it made royalty payments totaling $232,722.  The amount of

royalty payments declared by Copar is the same amount reported as received on the Individual

Defendants' 2003 tax returns.  This information supports the United States' argument  that it is

entitled not only to obtain information on all transactions between Copar and the Individual

Defendants but it is also entitled to information as to whether Copar made other payments to, or

traded goods or services with, entities owned or controlled by the Individual Defendants.  The

United States contends that the discovery ordered by Magistrate Judge Molzen was reasonably

necessary to determine whether monies flowed from Copar to the Individual Defendants through

these business entities.

　　　　The United States further asserts that in the Defendants' supplemental responses to

discovery, Defendants have disclosed that Copar either loaned money to or borrowed money

from Defendants Richard Cook and Kelly Armstrong and numerous entities affiliated with these

Defendants.  The United States contends that these transactions were redacted from Copar's

general ledgers making it critical for the United States to obtain the Individual Defendants'

documents to be able to test Copar's information.  In short, according to the United States,

Copar's records alone are insufficient to disclose the full picture of how moneys, goods, and

services were exchanged among Copar, the Individual Defendants, and their affiliated entities.

　　　　The Court concludes that Magistrate Judge Molzen committed no factual or legal error

in her rulings requiring the production of Related Business Entity Documents.  Rule 26(b)(1)

permits discovery of '[r]elevant information' and the discovery must 'appear[ ] reasonably

calculated to lead to the discovery of admissible evidence.'" *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (cited in *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, No. CIV–09–1114–D, 2012 WL 32910, *2 (W.D. Okla. Jan. 6, 2012)).  Although all discovery is limited by Rule 26(b)(2), the actual scope of discovery should be determined according to the reasonable needs of the action. Courts may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested. *See United Food and Commercial Workers*, at *3 (citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory committee's note (2000)).  Significantly, a party should not be limited by its opponent's theory of the case in determining what is discoverable. *Id.* at 1192.  The United States convincingly argues that its claims allow discovery of indirect exchanges or money, goods and services among Copar, the Individual Defendants and the numerous business entities affiliated with them.

IT IS ORDERED that the OBJECTIONS TO MAGISTRATE'S MAY 11, 2012 ORDER [DOC. 191] (Personal Financial Statements, Unrelated Business Transactions) (Doc. No. 195) are overruled.

_____
SENIOR UNITED STATES DISTRICT JUDGE