IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                  Civ. No.  09-1201 JAP/KBM

COPAR PUMICE COMPANY, INC.,
KELLY ARMSTRONG, RICHARD P. COOK,
SHIRLEY A. COOK, and DEBBIE CANTRUP,

    Defendants.

## MEMORANDUM OPINION AND ORDER

In Defendants' MOTION FOR SUMMARY JUDGMENT (Jurisdiction and Economic Loss Rule) (Doc. No. 201) (the Motion),[1] Defendants ask the Court to dismiss the United States' tort claims for conversion, trespass, and unjust enrichment because, Defendants argue, those claims are really breach of contract claims. Defendants contend that the claims are based on a Settlement Agreement executed in April 2002 by the United States and Defendants to resolve litigation in the United States Court of Federal Claims. Defendants assert that the Court of Federal Claims, not this Court, has continuing jurisdiction to enforce the terms of the Settlement Agreement. Defendants also argue that the United States' tort claims are barred by the economic loss rule. Finally, Defendants maintain that the United States' unjust enrichment claim, which must be based on quasi-contractual obligations, should be dismissed because the written

---

[1] In ruling on the Motion, the Court has also considered Defendants' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Jurisdiction, Economic Loss Rule) (Doc. No. 202), THE UNITED STATES' RESPONSE TO DEFENDANTS MAY 25, 2012 "MOTION FOR SUMMARY JUDGMENT," DOC. 201 (Doc. No. 247) (Response), and DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [DOC. 201] (jurisdiction, economic loss rule) (Doc. No. 268) (Reply).

Settlement Agreement governs this dispute.

    I.  Standard of Review

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

    II.  Background

This lawsuit involves a pumice mine located in the Jemez Ranger District of the Santa Fe National Forest.  In 1988, Defendants, members of the Cook family, located 23 claims, known as the Brown Pacer Mining Claims, for mining pumice.  In September 1988, Defendants leased the mining rights to Copar Pumice Company, Inc. (Copar), a closely-held corporation owned by Defendant Richard Cook's three daughters: Defendant Debbie Cantrup, Defendant Kelly Armstrong and Katherine Fishman.  Defendant Kelly Armstrong, the president of Copar manages Copar's daily operations.

In 1993, Congress passed the Jemez National Recreation Area Act of 1993 (JNRAA), which created the Jemez National Recreation Area encompassing the Brown Placer Mining Claims.  The JNRAA prohibited the issuance of patents for mining claims after May 30, 1991 and prohibited the removal of common variety minerals.  *See* 16 U.S.C. §§ 460jjj et seq.

In 1994, however, the Department of the Interior (DOI) determined that the Brown Placer Mining Claim Nos. 9-12 were validly located for "uncommon" stonewash pumice suitable for use in the garment finishing business.  The DOI determined that this uncommon pumice was locatable for the stonewash garment industry if the pumice had a diameter of 3/4

inch or larger (3/4"+ pumice).  In 1997, the Santa Fe National Forest approved Copar's Plan of Operations for a term of ten years, which allowed  Copar to mine and remove "locatable" pumice from Claims 9-12.  This mining operation was known as El Cajete Mine.[2]

                A.  Defendants' Fifth Amendment Takings Case

In response to the JNRAA, Defendants sued the United States in the Court of Federal Claims for damages alleging that the JNRAA affected an unconstitutional taking of their right to patent the Brown Placer Mining Claims without just compensation.  The Settlement Agreement was executed on April 4, 2002 by Defendants and the United States to resolve the lawsuit. *See*, *Cook et al. v. United States*, 42 Fed. Cl. 788, 792-3 (1999) (granting partial summary judgment and holding that under the JNRAA, Defendants asserted a valid takings claim for the loss of their right to patent their mining claims).  Under the Settlement Agreement, the United States paid to Defendants and their counsel $3,911,838.00 in exchange for Defendants' release of their takings claims.  In the Settlement Agreement, Defendants and Copar relinquished all their claims against the United States that were or could have been raised in the Court of Federal Claims and agreed not to pursue their appeal in the DOI proceedings, which declared the remaining 19 Brown

---

[2] El Cajete Mine was an open pit pumice mine and pumice screening plant. *See Copar Pumice Co., Inc. v. Bosworth*, 502 F. Supp. 2d 1200, 1203 (D. N.M. 2007) (upholding administrative decision that affirmed notice of noncompliance issued by Forest Service to Copar regarding its operation of El Cajete Mine).

Placer Mining Claims void. *See United States v. Armstrong et al.*, N.M.N.M. 97937.[3] The Settlement Agreement further provided that Brown Placer Mining Claim Nos. 9-12 were held by Defendants "'as unpatented mining claims subject to all pertinent statutes and regulations.'" (Mot. Ex. 1 at ¶ 26.) In the Settlement Agreement, Defendants also acknowledged that they were "prohibited from the disposal of common variety pumice" mined on Brown Pacer Mining Claim Nos. 9-12 under 16 U.S.C. §460jjj-2(b). (*Id.*) The parties agreed that the United States Court of Federal Claims retained jurisdiction "[over] any proceedings to enforce this agreement." (*Id.* ¶ 4.) The Settlement Agreement also provided that it would not be used as precedent or argument "in this or any other case." (*Id.* ¶ 5.) On May 6, 2002, the parties filed a "Joint Stipulation of Dismissal With Prejudice," and the case was closed. (Resp. Exs. 1, 3.)

### B. United States' Claims In This Lawsuit

In the Amended Complaint (Doc. No. 22), the United States asserts that Defendants were prohibited from extracting and selling "common variety" pumice from El Cajete Mine under federal mining statutes, under Forest Service regulations, and under the 2002 Settlement Agreement. (*Id.* ¶ 50.) Defendants contend that if they extract only the 3/4" + pumice, they can process and sell the pumice for other uses under the statutes, regulations, and the Settlement

---

[3] In this administrative proceeding before the Department of the Interior Board of Hearings and Appeals, the United States Forest Service successfully challenged 19 of Defendants' Brown Placer mining claims. However, Administrative Law Judge (ALJ) Heffernan acknowledged that the United States was not challenging claims 9-12 because the Forest Service had already conducted mineral examinations and determined that those claims contained minerals that could be mined. ALJ Heffernan noted that Defendants had located 23 placer mining claims for the purpose of mining pumice of at least 3/4 inch size, which is used in the stonewash garment industry. The Forest Service challenged the remaining 19 claims because the pumice on those claims had no value since its quantity was excessive for use in the stonewash industry. *See generally Copar Pumice Co., Inc. v. Bosworth*, 502 F. Supp. 2d 1200, 1213-14 (D. N.M. 2007) (Johnson, J.) (explaining administrative proceeding and the takings case).

Agreement.

The Environmental Impact Statement, issued as part of the Plan of Operation for El Cajete Mine, required Copar to stockpile common variety pumice and use it for reclamation of the area.  Under the Plan of Operation, the 3/4"+ pumice was sent out for processing at Copar's plants in San Ysidro and Espanola, New Mexico.  The United States alleges that from April 2002 through February 2009 Defendants unlawfully removed, processed, and sold common variety pumice from El Cajete Mine in violation of federal statutes and regulations.  Specifically, the United States claims that during the operation of El Cajete Mine 1) Defendants unlawfully trespassed on federal land to extract pumice for common variety purposes; 2) Defendants unlawfully converted federal property by removing and selling common variety pumice; and 3) Defendants were unjustly enriched from the mining and sale of common variety pumice.  The United States contends that Defendants violated several federal statutes and regulations: 1) the National Forest Organic Administration Act of 1897, 16 U.S.C. § 551; 2) the Surface Resources Act of 1955 (as amended), 30 U.S.C. §§ 611 et seq.; 3) the Common Varieties Act of 1947 (as amended), 30 U.S.C. §§ 601 et seq.; 4) the General Mining Law of 1872, 30 U.S.C. §§ 21-54; 5) the JNRAA; and 6) Forest Service regulations, 36 C.F.R. 228, Subpart C. (Am. Compl. ¶ 3.) The United States seeks a declaratory judgment, compensatory damages, and permanent injunctive relief.  The Court has granted partial summary judgment in favor of Defendants holding that the United States is precluded from asserting the trespass, conversion, and unjust enrichment claims against Defendants and Copar for any mining activity prior to April 3, 2006. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 43).

In the Motion, Defendants contend that the United States' claims are really claims for breach of the Settlement Agreement.  Defendants point to Paragraph 3 of the Settlement

Agreement, which prohibited Defendants from disposing of the common variety pumice and allowed Defendants to extract and process only 3/4"+ "laundry-grade" pumice. According to Defendants, this provision did not specifically restrict the ultimate use of the 3/4"+ pumice. (Mot. ¶¶ 9-12.) Defendants argue that Paragraph 3 of the Settlement Agreement allows Defendants to extract 3/4"+ pumice regardless of its end use. Since the Court of Federal Claims retained continuing jurisdiction over any "proceedings to enforce" the Settlement Agreement, Defendants contend this Court lacks jurisdiction either under the terms of the Settlement Agreement or under the doctrine of priority jurisdiction. *See generally*, *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (1972) (stating that if a case is filed in a federal district court, and the same parties sue in another federal district court over the same dispute, in the interest of judicial economy, the second case should be stayed until the first one is resolved).

Second, Defendants argue that under New Mexico's economic loss rule, the United States cannot sue in tort to recover economic losses that can be recovered under the terms of a contract. *See Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1171 (D. N.M. 2006) (stating that the economic loss rule prevents a contract claim from "masquerading" as a tort claim when the alleged damages constitute solely economic loss). Defendants assert that the United States' claims are based on Defendants' alleged breach of their promise not to remove common variety pumice from El Cajete Mine. According to Defendants, since the Defendants allegedly breached their duty "created by contract," the United States' tort claims are barred and should be dismissed. Finally, Defendants argue that the unjust enrichment claim should be dismissed because this quasi-contractual claim is only available if there is no remedy under a written contract.

III. Discussion

A. Jurisdiction

In its Response, the United States argues that its claims for trespass, conversion, and unjust enrichment do not arise out of the Settlement Agreement, but instead, the claims are based on violations of federal statutes and regulations applicable to federal land and minerals. The United States asserts that Defendants were only allowed to mine, remove, and sell 3/4"+ pumice that was destined for the stonewash garment industry. The trespass claim asserts that Defendants trespassed on and damaged federal land in violation of federal statutory and New Mexico tort law. (Am. Compl. ¶ 53.) The United States contends that Defendants converted property of the United States when Defendants willfully extracted and removed common variety pumice. (Am. Compl. ¶ 60.) The United States alleges that Defendants have been unjustly enriched by wrongfully extracting and removing common variety pumice. (Am. Compl. ¶ 63.)

The United States notes that although the Settlement Agreement recognized Defendants' obligation to comply with federal law, its claims do not arise under the Settlement Agreement. In other words, the United States does not ask the Court to enforce the Settlement Agreement by awarding damages or other relief under that agreement. The United States maintains that its claims are for Defendants' breach of their duty to comply with federal statutory and regulatory law, and that breach is remedied under common tort law.

The Settlement Agreement resolved Defendants' claim that the JNRAA eliminated vested property rights in mineral patents to which Defendants were entitled. The Settlement Agreement essentially placed a value on the lost right to patent Brown Pacer Mining Claim Nos 9-12. In addition the Settlement Agreement reaffirmed Defendants' obligation to comply with federal law in all mining activities on the unpatented Brown Placer Mining Claim Nos 9-12.

However, the Settlement Agreement is not the only source of the duties required of Defendants. Several statutes and Forest Service regulations promulgated under the statutes provide the standard by which Defendants' mining activities should be judged.

Defendants assert that this dispute really centers around the interpretation of Paragraphs 3 and 4 of the Settlement Agreement, which state,

> 3. . . . Defendant [United States] agrees that Plaintiffs [Cooks and Copar] will retain Brown Placer Mining Claims Nos. 9-12 as unpatented mining claims subject to all pertinent statutes and regulations. The parties acknowledge that Plaintiffs are prohibited from the disposal of the common variety pumice produced from the Brown Placer Mining Claims Nos. 9-12 pursuant to 16 U.S.C. § 460jjj-2(b).
>
> 4. Plaintiffs and Defendant submit themselves to the continuing jurisdiction of the United States Court of Federal Claims, subject to applicable law, in the event, and for the sole purpose, of any proceedings to enforce this agreement. . . .

(Mot. Ex. 1.)  Defendants argue that paragraph 3, which prohibits the disposal of common variety pumice refers to the disposal of pumice -3/4" in diameter.  The United States argues that the designation of pumice as either common variety or uncommon variety depends on the end use of the pumice, in addition to the size of the pumice extracted from the mine.  However, the United States bases its argument on the Forest Service regulations governing the meaning of common variety minerals and uncommon variety minerals, which seem to focus on the use of a

particular mineral.[4] Thus, the United States' claims center around the statutory and regulatory meaning of these terms, which were used in the Settlement Agreement.

The United States further asserts that the Court of Federal Claims has jurisdiction only over claims brought *against* the United States for damages. *See* 28 U.S.C. § 1491(a)(1) (stating that Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort."). In contrast, this Court's jurisdiction is broader and includes jurisdiction over claims brought under federal law and claims brought by the United States. *See* 28 U.S.C. §§ 1331, 1345.[5] The United States correctly contends that this Court has jurisdiction over this action to enforce the Defendants' duties to follow federal

---

[4] In 36 C.F.R. §228.41(c), the Forest Service describes types of minerals considered to be common variety:

> Mineral materials to which this subpart applies. This subpart applies to mineral materials which consist of . . . pumice[.] . . . Such mineral materials include deposits which, although they have economic value, are used for agriculture, animal husbandry, building, abrasion, construction, landscaping, and similar uses.

36 C.F.R. §228.41(c)). Subsection (d) describes the types of minerals considered to be "uncommon variety."

> Minerals not covered by this subpart. Mineral materials do not include any mineral used in manufacturing, industrial processing, or chemical operations for which no other mineral can be substituted due to unique properties giving the particular mineral a distinct and special value . . .

36 C.F.R. § 228.41(d).

[5] The Court of Federal Claims, however, recognized the United States' right to enforce federal mining law and regulations in an opinion issued in 2009. *See Cook v. United States*, 85 Fed. Cl. 820 (2009) (holding that the Settlement Agreement did not bar the United States from enforcing federal law in regulating Defendants' activities at El Cajete mine).

statutory and regulatory law, the duties recognized in the Settlement Agreement, but which may be enforced through tort law.

Along similar lines, Defendants also argue that the Court should decline jurisdiction under the doctrine of priority jurisdiction. Under this doctrine, "where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court." *O'Hare Int'l Bank*, 459 F.2d at 331. Defendants contend that the Court of Federal Claims is the district court on which jurisdiction of this dispute first attached, and this court should not "take away" the proceedings by exercising jurisdiction over these claims.

The United States' tort claims in this lawsuit are based on alleged violations of federal mining and mineral statutes and regulations promulgated under those statutes. The United States has not brought this action to enforce the Settlement Agreement under the guise of a tort action. Even though the Settlement Agreement acknowledged Defendants' obligation to comply with federal statutes and regulations, the United States' claims in this lawsuit do not originate with the Settlement Agreement. Thus, the claims are properly before this Court under 28 U.S.C. § 1331 (federal question jurisdiction), § 1345 (claims by the United States), § 2201 (declaratory judgment), § 2202 (injunctive relief), and § 1367(a) (supplemental jurisdiction).

Moreover, the doctrine of priority jurisdiction does not bar these claims. The *Cook* case was closed in 2002 after the parties filed their Stipulation of Dismissal. The claim asserted by Defendants in the Court of Federal Claims was to obtain just compensation for the taking of their property, the right to patent the Brown Placer Mining Claims. The Settlement Agreement established the fair compensation amount for those claims and recognized the Defendants' right to mine the unpatented Brown Placer Mining Claim Nos. 9-12. Therefore, the Court of Federal

Claims does not have jurisdiction over this action involving alleged violations of federal law and regulations. This case involves different issues, and the concerns for judicial economy are not present here. *See O'Hare Int'l Bank*, 459 F.2d at 331(stating that the policy behind the priority of jurisdiction doctrine is to avoid "[t]he simultaneous prosecution in two different courts of cases relating to the same parties and issues, [which] leads to the wastefulness of time, energy and money.")(citing *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965). Therefore, this Court will not dismiss this case for lack of jurisdiction.

### B. Economic Loss Doctrine

Defendants next argue that the United States' claims are barred under the economic loss doctrine. The economic loss doctrine provides that a plaintiff may not recover in tort for economic losses that flow from a contract, i.e., claims that do not involve personal injury or property damage. *Farmers Alliance Mut. Ins.*, 452 F. Supp. 2d at 1171 (citation omitted).

The New Mexico Court of Appeals adopted the economic loss rule in *Utah International, Inc. v. Caterpillar Tractor Co.,* 775 P.2d 741 (N.M. Ct. App. 1989). In *Utah International, Inc.*, the court held that "in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from injury . . . are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id.* at 744. The New Mexico Supreme Court adopted this reasoning and observed that "[a]s a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract." *In re Consol. Vista Hills Retaining Wall Litig.,* 893 P.2d 438, 446 (N.M. 1995). The court concluded that in a dispute between parties to a contract, "the law of contract provides an adequate remedy." *Id.* However, not all disputes between contracting parties are remedied by contract law.

11

Under New Mexico law, the "difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law." *Kreischer v. Armijo*, 884 P.2d 827, 829 (N.M. Ct. App. 1994). For example, common law claims of negligent and intentional misrepresentation, even if related to a contract, can be separately adjudicated because they arise from an independent and recognized duty of care. *Bull v. BGK Holdings, LLC*, 2012 WL 1609280, *3 (D. N.M. May 7, 2012) (Johnson, J. ) (unpublished decision). Because the United States' allegations of trespass, conversion, and unjust enrichment go beyond allegations that Defendants failed to perform under the Settlement Agreement, the Court finds that the economic loss rule does not bar the United States' claims. These claims stem from alleged violations of Defendants' duties imposed by law, duties recognized under the Settlement Agreement but not imposed by the Settlement Agreement. Thus, the Court will not dismiss the United States' claims under the economic loss rule.

C. Unjust Enrichment Claim

Defendants argue that the Court must dismiss the unjust enrichment claim because under New Mexico law, this quasi-contractual remedy cannot be recovered if a written contract governs the relationship between the parties to a dispute. *See Ontiveros Insulation Co. v. Sanchez,* 3 P.3d 695 (N.M. Ct. App. 2000) (concluding that an unjust enrichment claim arises in equity, and it cannot exist where the parties are in privity of contract). The Tenth Circuit Court of Appeals has said,

> [T]he hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue. Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual [ ] provision.

*Elliott Industries Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa,* 130 F.3d 950, 957 (10th Cir. 1997) (citations omitted); *see also* 26 Richard A. Lord, *Williston on Contracts* § 68:5 (4th ed. 2004) ("Where the plaintiff has no alternative right on an enforceable contract, the basis of the plaintiff's recovery is the unjust enrichment of the defendant."). This argument fails for the same reason the previous arguments failed. The Settlement Agreement, while recognizing Defendants duty to follow federal law and regulations in Defendants' mining activities, does not prevent recovery under the theory of unjust enrichment. Therefore, the Court will not dismiss the United States' claim for unjust enrichment.

    IT IS ORDERED that the Defendants' MOTION FOR SUMMARY JUDGMENT (Jurisdiction and Economic Loss Rule) (Doc. No. 201) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE