IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**THE UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                                              **CIV 09-1201 JAP/KBM**

**COPAR PUMICE COMPANY, INC., et al.,**

    **Defendants.**

### ORDER ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER *(Doc. 189)*

THIS MATTER comes before the Court on Defendants' Motion for Protective Order *(Doc. 189)*, filed May 9, 2012 and fully briefed on August 9, 2012. *See Docs. 189, 214, 244, 266.* The Court has also reviewed the United States' Motion to Compel *(Doc. 218)*, filed on June 11, 2012 and fully briefed on July 17, 2012, which deals with the same set of discovery requests at issue in the Defendants' Motion for Protective Order *(Doc. 189)*. *See Docs. 218, 243, 250, 251.* Having reviewed the parties' submissions and the relevant law, I find that Defendants' Motion for Protective Order *(Doc. 189)* is not well-taken, and I will therefore deny the Motion. Given my ruling on Defendants' Motion for Protective Order *(Doc. 189)*, the United States' Motion to Compel *(Doc. 218)* is moot .

**I.   BACKGROUND**

The facts and circumstances of this litigation have been set forth on multiple occasions by the Honorable James A. Parker, and to conserve judicial resources, will not be restated here. *See, e.g., Docs. 221, 222, 223, 224 and 248.*

1

**II.     LEGAL STANDARD**

    **A.     Numerical Limits Upon Discovery**

The numerical limitation on interrogatories specifically includes "all discrete subparts." FED. R. CIV. P. 33(a)(1).  The term "discrete subparts" is not defined in Rule 33 itself or in the Local Rules for the Federal District of New Mexico.  As explained in the commentary regarding the 1993 Amendments to the Rules, however, "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."  FED. R. CIV. P. 33, advisory committee note.

To be considered a valid subpart rather than a separate interrogatory, a question must therefore logically and factually relate to the primary question rather than constitute a separate area of inquiry.  *See Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 646 (D. Kan. 2011).  For instance, a single interrogatory asking for facts supporting denials of seven different allegations in a complaint should be counted as seven separate interrogatories.  *Id.* at 646-47.  On the other hand, a single interrogatory requesting facts in support of the four related affirmatives defenses of unclean hands, laches, estoppel, and/or waiver should count as a single interrogatory.  *Id.* at 647 (noting that these defenses were pled in a single paragraph, that "[t]he closely related nature of these equitable defenses satisfies the common theme analysis," and that "these defenses appear to be boilerplate defenses that are commonly asserted together in an answer").

The party answering interrogatories must serve responses and any objections within thirty days, and any objection not timely stated is waived "unless the court, for good cause, excuses the failure."  FED. R. CIV. P. 33(b)(2) and (4).  *Accord Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 256 F.R.D. 661, 665 (D.N.M. 2009).

### B. Substantive Limits Upon Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or tangible things and the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1). The United States District of Colorado has characterized this standard as "deliberately broad" and noted that it is intended "to allow the parties to discover the information necessary to prove or disprove their cases." *Scotsman Indus., Inc. v. Broadbent*, 2012 WL 3869183 at *2 (D. Colo. Sept. 6, 2012) (citing *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)). "If the material sought is relevant to the case and may lead to admissible evidence, it should generally be produced." *Id.*

Nonetheless, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). For instance, "the court may limit the time, place, and manner of discovery or even bar discovery altogether on certain subjects, as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* at 599 (quoting FED. R. CIV. P. 26(c)). The party seeking a protective order on this basis must show good cause. FED. R. CIV. P. 26(c)(1).

## III. ANALYSIS

### A. Counting of Interrogatories

Defendants' Motion asserts that the United States exceeded the permitted number of interrogatories in its first set of discovery requests, which was served in February 2011. *See Doc. 189* at 1 (asserting that the United States' first set of discovery requests included 31

3

interrogatories with 80 discrete subparts to Copar and 22 interrogatories with 41 discrete suparts to the Individual Defendants); *Doc. 214* at 5 (indicating that the United States' first set of discovery was served in February 2011).  Because neither Copar nor the Individual Defendants objected to the numbering of the interrogatories in the United States' first set of discovery, any such objections are deemed waived.  *See* FED. R. CIV. P. 33(b)(2) and (4).  The Court will accept the interrogatories as numbered, meaning that the United States' second set of interrogatories to Copar begins with Interrogatory No. 32, and its second set of interrogatories to the Individual Defendants begins with Interrogatory No. 23.

Defendants contradict their Motion in their Reply, arguing that rather than exceeding the allowable interrogatories with the first set of interrogatories, the United States "did not necessarily violate the numerosity limit, so the issue was *not* presented." *Doc. 244* at 4 (emphasis in original).  Apart from this inconsistency, Defendants' argument is not well-taken.  The present case is complicated, and, as demonstrated by the Court's initial grant of double the standard amount of interrogatories for Defendant Copar, discovery was always expected to be voluminous.  *See* Fed. R. Civ. P. 33(a)(1) (providing for no more than 25 written interrogatories to be served upon each party "[u]nless otherwise stipulated or ordered by the court").  Defendants should have anticipated that the United States' first set of discovery would not be its last and therefore made any objections to numerosity or counting of interrogatories together with their responses to same.

With respect to Copar, the United States initially served 31 interrogatories followed by a second set of 15 interrogatories, for a total of 46 interrogatories.  *See Doc. 214* at 4; *Doc. 189-3*.  As previously noted, the Court imposed a limit of 50 interrogatories to Copar, so, unless I find that there are discrete subparts in the second set which should be separately counted, the United

4

States has not exceeded the allowable number of interrogatories to Copar.  Upon review of the 15 interrogatories served upon Copar as part of the United States' second set of discovery, I find only one interrogatory that potentially contains discrete subparts.

Interrogatory No. 40 asks Copar to "[i]dentify and describe every fact which Copar contemplates it will, or may offer, or rely on, at trial in support of *any defense* to the claims in this matter." *See Doc. 189-3* at 4 (emphasis added).  This interrogatory is different from that at issue in *Pouncil v. Branch Law Firm.  See* 277 F.R.D. at 646-47.  The interrogatory in *Pouncil* asked for all facts supporting the defendants' denial of the allegation that the defendants breached their duty to exercise ordinary care in seven specific ways, which were broken out into seven subparagraphs.  *See id.*  The Federal District Court for the District of Kansas ruled that the interrogatory in *Pouncil* should be counted as seven interrogatories rather than one.  *See id.*

In the present case, by contrast, the United States is seeking all facts in support of any defense that Defendant Copar will rely upon at trial.  *See 189-3* at 4.  The United States is not seeking facts in support of each and every defense asserted in Copar's Answer to the Amended Complaint, but only as to any defense that will be asserted at trial.  Recognizing that Defendant Copar has asserted a defense of good-faith reliance upon the advice of counsel in this case, which was not specifically pled, *see Docs. 33, 112* at 2, I find that the United States' Interrogatory No. 40 seeks not to improperly expand the number of interrogatories allowed but merely to sniff out any previously undisclosed information in order to be prepared for trial.

### B.     Personal Financial Information

Defendants seek a protective order, ruling that Defendant Kelly Armstrong is not required to respond to the United States' Request for Production Nos. 110, 111, and 112.  These requests are directed to Defendant Kelly Armstrong and seek production of Ms. Armstrong's

personal bank statements, loan documents, and documents reflecting or referring to compensation she received from "any of the other Defendants or any entity in which any one or more Defendant has a financial interest." *See Doc 189-7* at 2. In their Motion for Protective Order, Defendants argue simply that these requests are overly burdensome, cumulative, and overly costly. *See Doc. 189* at 3. In other words, Defendants' position is that "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting FED. R. CIV. P. 26(b)(2)(C)(iii)).

Defendants have similarly opposed production of their personal financial information throughout this litigation. *See, e.g., Docs. 167, 181, 191, 195.* However, as the Court has previously recognized, Defendants' personal information is undoubtedly relevant in this case, where the Government alleges that Defendants have unlawfully removed and sold pumice and have thereby been unjustly enriched. *See, e.g., Doc. 191* at 4. Moreover, it appears that Defendants have at least arguably misrepresented or misstated facts related to the flow of money between them. Initially, Defendants asserted that "Copar has not paid any royalty payments or other compensation under the Lease to the claimants." *See Doc. 55-5* at 5. However, after receiving the Individual Defendants' personal tax returns (which Defendants argued were not subject to discovery), the Government found that Copar actually paid a total of $155,766 in pumice royalty payments to the Individual Defendants in 2003. *See Doc. 214* at 15 (citing *Doc. 199-2*). Throughout this litigation, Defendants have maintained that other than salary paid to Kelly Armstrong, the "defendants received no compensation from Copar since 2004." *Doc. 244* at 15. However, the Government notes that newly unredacted documents produced in May 2012 appear to indicate that Copar paid a "Drawing" of $120,610 to Kelly Armstrong in 2007; "Cash"

in the amount of $20,000 to Kelly Armstrong in 2009; and $165,000 "Note Payable" to Richard Cook in 2010. *See Doc. 214* at 15 (citations omitted).

Without even attempting to explain their apparent misstatements, Defendants continue to argue that any unproduced personal financial information is irrelevant and that further production would be overly burdensome. *See Doc. 244* at 14-15. In an attempt to alleviate the burden of producing all of the requested personal financial information, I previously ordered Defendants to provide annual financial statements from 2002-2011 identifying all assets and liability exceeding a value of $10,000. *See Doc. 191* at 4 ("the May 11, 2012 Order"). Defendants objected to my May 11, 2012 Order, appealing to District Judge James A. Parker, who upheld the May 11, 2012 Order. *See Doc. 223* at 9-10 (holding that "[t]he claim asserted by the United States against the Individual Defendants, particularly the claim that they were unjustly enriched by Copar's mining activities, makes this information particularly relevant and discoverable under Rule 26(b)(1), and the Court will overrule this objection").

I will now require the Individual Defendants to respond fully and completely to Request for Production Nos. 110-112. In view of the recently produced documents from Copar indicating that, contrary to their earlier testimony, the Individual Defendants have in fact received thousands of dollars from Copar, such documents are highly relevant and must be produced.

### C. Discovery Regarding Affiliated Entities

The United States, in RFP Nos. 114, 115, 116, 118, 119, and 121, seeks documents related to businesses in which the Individual Defendants have a financial interest. *See Doc.189-7* at 3-5. Defendants object and seek a protective order on the grounds that these RFPs seek information that is not relevant to the claims and/or defenses in this litigation. *See Doc. 189* at 7 (asserting that "[t]he requested documents are not likely to lead to the discovery of admissible

evidence with respect to the post-April 4, 2006 trespass, conversion or unjust enrichment claims against defendants"). The United States explains that the requested information is relevant to "the indirect manner in which the Individual Defendants were unjustly enriched by Copar's unlawful activities." *See Doc. 214* at 18. Such information might show, according to the United States, whether the corporate form was respected by such affiliated entities and "whether it would be appropriate to impose liability on the basis of piercing the corporate veil, civil conspiracy, or joint enterprise." *Id.*

For example, the United States notes that whereas Defendants initially stated that the only connections between Copar and affiliated entities such as DAK Partnership, Espanola Transit Mix, Cooks Home Center, and Valley National Bank were sharing of office space, land, or equipment without leases or payment of compensation, *see Doc. 129-3* at 5-6, Defendants have more recently disclosed that Copar loaned and/or borrowed money from many of these entities, *see Doc. 214* at 20. Moreover, the redacted ledgers originally produced by Copar in this litigation omitted any reference to the flow of money to and from the Affiliated Entities, yet the recently produced unredacted ledgers show that transactions with the Affiliated Entities amount to over one million dollars. *See Doc. 214* at 20-21.

Defendants did not respond or even attempt to explain the newly disclosed transactions in the briefing. *See Doc. 244* at 15-18. Moreover, Defendants do not dispute that they have essentially refused to participate in the United States' efforts to at least initially limit their discovery requests to reduce the burden upon Defendants. *See Doc. 214* at 19-20. Defendants cannot credibly complain about the burden of discovery and wholesale refuse to work with the United States in limiting discovery.

I find, based on the evidence of past—and previously undisclosed—transactions between Defendant Copar and the Affiliated Entities, that Defendants must respond to RFP Nos. 114, 115, 116, 118, 119, and 121.  In light of the burden of producing the voluminous documents, however, Responses will be limited as outlined by the United States in its efforts to work with Defendants.  With respect to RFP Nos. 113, 114, and 117, Defendants must produce documents from April 2002 forward as to the "priority Affiliated Entities" only.  To the extent that links are discovered between Copar and additional entities, the United States may then obtain documents as to such additional entities.  Regarding RFP Nos. 115 and 116, Defendants must, before producing the requested documents, first produce a list of loans and compensation provided to or received from entities in which they have a financial interest.  The United States, after receiving Defendants' list of loans and compensation from other entities, will then have the opportunity to request further documentation if necessary.  As to RFP No. 118, which seeks "any and all documents reflecting the amount of your ownership interests during the same period of time," I find that the request is well within the scope of discovery and not overly burdensome, and I therefore order Defendants to respond to RFP No. 118 completely.  Defendants must also initially provide a list of any investors, shareholders, partners, directors, and officers of the businesses in which they have had an interest in response to RFP No. 119.  The United States, upon review of this information may then seek supporting documentation and/or information as to employees of such businesses.  Defendants are further ordered to respond fully to RFP No. 121.

### D. Overall Limits Upon Discovery

Consistent with my previous discovery orders, I will require that Defendants' personal financial information be produced subject to the standard confidentiality order which is already in place. Further, Defendants' discovery responses are limited to 2002 and forward.

## IV. CONCLUSION

It has not gone unnoticed that Defendants have opposed nearly every discovery request that has been made in this case, and, in many cases, they have refused to even negotiate when the United States has offered to limit its requests without Court intervention. While this tactic may successfully delay production of documents, it does not often succeed in preventing production of documents altogether. In cases like this, where Defendants' initial representations are continually proven suspect, the price of the delay strategy is Defendants' and their counsel's credibility with the Court.

**Wherefore,**

**IT IS ORDERED** that Defendants' Motion for Protective Order *(Doc. 189)* is denied. Consistent with limitations previously imposed by the Court and the United States' proposals, Defendants are ordered to respond to the United States' Second Set of Discovery as follows:

(1) The Individual Defendants must respond fully and completely to Request for Production Nos. 110, 111, and 112.

(2) The Individual Defendants must respond to Request for Production Nos. 113, 114, and 117 by first producing the requested documents regarding "priority Affiliated Entities," as determined by the United States. The United States may obtain documents regarding other entities to the extent that links are discovered between such other entities and Copar.

(3) The Individual Defendants must respond to Requests for Production Nos. 115 and 116 by first producing a list of loans and compensation provided to or received from entities in which they have a financial interest.  The United States may request further responsive information as necessary.

(4) The Individual Defendants must respond fully and completely to Request for Production No. 118.

(5) The Individual Defendants must respond to Request for Production No. 119 by initially providing a list of any investors, shareholders, partners, directors, and officers of the businesses in which they have had an interest.  The United States, upon review of this information, may then seek supporting documentation and/or information as to employees of such businesses.

(6) The Individual Defendants must respond fully to Request for Production No. 121.

**IT IS FURTHER ORDERED** that given the Court's ruling herein, the United States' Motion to Compel *(Doc. 218)* is found moot.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE