IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    CIV 09-1201 JAP/KBM

COPAR PUMICE COMPANY, INC., et al.,

      Defendants.

## ORDER ON THE UNITED STATES' MOTION FOR PROTECTIVE ORDER *(DOC. 233)* AND DEFENDANTS' MOTION TO COMPEL *(DOC. 257)*

THIS MATTER comes before the Court on the United States' Motion for Protective Order Concerning Defendant Kelly Armstrong's Second Set of Interrogatories and Requests for Production *(Doc. 233)*, filed June 25, 2012 and fully briefed on August 7, 2012. *See Docs. 233, 256, 261, 262, 265*. The Court has also reviewed Defendant's Motion to Compel *(Doc. 257)*, filed on July 20, 2012 and fully briefed on August 27, 2012. *See Docs. 257, 264, 272, and 277*. Having reviewed the parties' submissions and the relevant law, I find that the United States' Motion for Protective Order *(Doc. 233)* is well-taken and should be granted. Given my ruling on the Motion for Protective Order *(Doc. 233)*, Defendants' Motion to Compel *(Doc. 257)* is moot insofar as it seeks to compel production of information and/or documents responsive to Interrogatory No. 16 and Request for Production ("RFP") Nos. 20, 21, and 22. In all other respects, I find that Defendants' Motion *(Doc. 257)* should be denied.

1

I.      **Background**

The facts and circumstances of this litigation have been set forth on multiple occasions

by the Honorable James A. Parker and, to conserve judicial resources, will not be restated here.

*See, e.g., Docs. 221, 222, 223, 224, and 248.*

This, the latest in the parties' long line of discovery disputes, arises out of Defendant

Kelly Armstrong's Second Set of Interrogatories and RFPs, including Interrogatory No. 16 and

RFP Nos. 20, 21, 22 and 25, which are at issue in the United States' Motion *(Doc. 233).*

Interrogatory No. 16 asks the United States to

> identify all instances the Forest Service previously requested its
> counsel or the U.S. Attorney's office to institute legal proceedings
> against defendants and fully state counsel's or the U.S. Attorney's
> response, including the instance disclosed in May 2005, when
> Forest Service counsel Disert informed Copar that the U.S.
> Attorney's office had refused the Forest Service's request to
> initiate legal proceedings against defendants.

*Doc. 261-1* at 5.  Counsel for the United States asked Defendants' attorney to provide a copy of

the referenced communication from Ms. Disert, *see Doc. 261-2*, but Defendants' attorney did not

respond, *see Doc. 233* at 4, until the Defendants' Response Brief, filed almost two months later,

*see Doc. 256-1.*  Defendants attach a three-page letter dated October 14, 2004 written to

Defendant Armstrong from her former counsel.  *See Doc. 256-1.*  The letter is completely

redacted except for the following lines, found at what appears to be the end of the letter:

> The agency's threats, however, are difficult to reconcile with a
> previous comment their attorney made to the effect she asked the
> Department of Justice (U.S. Attorney's office) to prosecute the
> trespass claim and was turned down.

*Doc. 256-1* at 2-3.

In RFPs at issue, Defendants seek: (1) "all documents pertaining to the 2002 Settlement

Agreement between the U.S. and defendants," (2) "all documents pertaining to the Forest

Service's requests to its counsel in the U.S. Attorney's office to institute legal proceedings

against defendants," (3) "all documents pertaining to legal advice or communications given to

the Forest Service pertaining to the institution of legal proceedings against defendants," and (4)

"all documents which discuss, mention or refer to the end use of an uncommon variety mineral,

including pumice." *See Doc. 261-1*at 7-9.

The United States properly objected to the subject discovery requests and timely filed its

Motion for Protective Order. *See Docs. 233, 257-1.* The United States objected to Interrogatory

No. 16 and RFP Nos. 20, 21, and 22 on grounds of relevance, vagueness, and ambiguity in

addition to asserting the attorney-client privilege, the work product doctrine, and the deliberative

process privilege. *See Doc. 257-1* at 1-2, 6-8.

Defendants move to compel production of documents and information responsive to

some of the same discovery requests at issue in the United States' Motion *(Doc.

233)*—specifically, Interrogatory No. 16 and RFP Nos. 20, 21, 22—as well as

others—specifically, Interrogatory Nos. 17 and 19 and RFP Nos. 23, 24, and 26. Interrogatory

No. 17 and RFP Nos. 24 and 26 pertain to "verifiable proof of laundry industry use." *See Doc.

257* at 2. Interrogatory No. 19 and RFP No. 23 concern disposition of waste which Defendants

contend was the result of mere processing of + ¾ " pumice. *See id.* at 2-3.

## II.     Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense—including the existence, description, nature, custody, condition, and

location of any documents or other tangible things and the identity and location of persons who

know of any discoverable matter." FED. R. CIV. P. 26(b)(1). The United States District of

Colorado has characterized this standard as "deliberately broad" and noted that it is intended "to

allow the parties to discover the information necessary to prove or disprove their cases."

*Scotsman Indus., Inc. v. Broadbent*, 2012 WL 3869183 at \*2 (D. Colo. Sept. 6, 2012) (citing

*Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)).  "If the material sought is

relevant to the case and may lead to admissible evidence, it should generally be produced."  *Id.*

Discovery is not without its limits, however.  Upon a showing of good cause, federal

courts are empowered to issue orders "to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1)(A).  "The

party seeking the protective order must submit 'a particular and specific demonstration of fact, as

distinguished from stereotyped and conclusory statements.'"  *Murphy v. Gorman*, 271 F.R.D.

296, 303 (D.N.M. 2010) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).  In the

present case, the United States claims that a protective order is appropriate because the

information Defendants seek is not only irrelevant but is also protected by the attorney-client

privilege, the work-product doctrine, and the deliberative process privilege.  *See Doc. 233* at 2.

Rule 501 of the Federal Rules of Evidence states that "in a civil case, state law governs

privilege regarding a claim or defense for which state law supplies the rule of decision."  FED. R.

EVID. 501.  Based upon this provision, Defendants argue that the United States' assertions of

privilege are governed by state law, rather than federal law, because this lawsuit involves state

law claims (i.e., trespass, conversion, and unjust enrichment).  *See Doc. 256* at 3.  The Court has

previously rejected this argument.  *See Doc. 167* at 7-8, *Doc. 221* at 9.  In fact, federal privilege

law generally applies in cases like the present case, which are not based upon diversity

jurisdiction.  *See* FED. R. EVID. 501, 1974 Enactment notes; *D'Oench, Duhme & Co. v. FDIC*,

315 U.S. 447, 471 (1942) (Jackson, J., concurring); *Vondrak v. City of Las Cruces*, 760

F.Supp.2d 1170-1177 (D.N.M. 2009).  *See also Doc. 221* at 9 (holding that "the United States'

state law claims for trespass, conversion, and unjust enrichment implicate important federal issues and require the application of several federal laws governing Copar's mining operations on lands owned by the United States and managed by the Forest Service").

"The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  It may also apply to the attorney's responsive communications back to the client, to the extent that such communications "would have a tendency to reveal the confidences of the client." *Id.* (quoting Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006)).  The party who claims the privilege bears the burden of proving it is applicable and "must bear the burden as to specific questions or documents, not merely by making a blanket claim." *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).  "Because confidentiality is key to maintaining the attorney-client privilege, a party waives the privilege when he voluntarily discloses to a third party material or information he later claims is protected." *In re Grand Jury Proceedings*, 616 F.3d at 1184.

The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).  It applies to information prepared by the attorney or his investigator or other such agent in anticipation of litigation or for trial. *Id.* at 238-39.  Again, it is the party asserting work product protection who must show it is applicable. *In re Grand Jury Proceedings*, 616 F.3d at 1185.

"[T]he deliberative process privilege protects documents, such as advisory opinions, recommendations, and deliberations, that reflect how government decisions are made." *Stewart*

*v. Dept. of Interior*, 554 F.3d 1236, 1239 (10ᵗʰ Cir. 2009).  "Recognizing that 'officials will not communicate candidly among themselves if each remark is a potential item of discovery,' the deliberative process privilege is primarily designed to 'enhance the quality of agency decisions by protecting open and frank discussion upon those who make them within the Government.'" *Trentadue v. Integrity Comm.*, 510 F.3d 1215, 1226 (10ᵗʰ Cir. 2007) (quoting *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)).  The privilege also "serves to prevent the premature disclosure of proposed policies, and avoids 'misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  It is "to be construed as narrowly as consistent with efficient Government operation." *Id.* at 1227 (quoting S. Rep. No. 89-813, at 9 (1965)).  To qualify for protection under the deliberative process privilege, a document "must be both predecisional and deliberative." *Id.* at 1227.  Purely factual material is not considered deliberative, unless it is "inextricably intertwined with policy-making processes." *Id.* at 1227 (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1119 (9ᵗʰ Cir. 1988)).  Significantly, New Mexico does not recognize the deliberative process privilege.  *Republican Party of New Mexico v. New Mexico Tax & Rev. Dept.*, 283 P.3d 853, 868 (N.M. 2012).

**III.     Analysis**

>    **A.     Neither the Forest Service's Pre-Litigation Discussions With Its Attorneys Concerning the Institution of Legal Proceedings Against Defendants Nor its Internal Drafts and Communications Concerning the 2002 Settlement Agreement Fall Within the Scope of Discovery.**

The process the Government went through to initiate this action is not relevant to any party's claims or defenses in this matter.  *See* FED R. CIV. P. 26(b)(1).  Defendants have not filed a counterclaim alleging malicious prosecution, or any other claim or defense that would render

the United States' prosecutorial decision-making process even potentially relevant. *See Docs. 32, 33, 34.* Moreover, the United States has not put the requested information concerning its alleged requests to institute legal proceedings against Defendants at issue. *See Fed. Deposit Ins. Corp. v. Wise*, 139 F.R.D. 168, 172 (D. Colo. 1991) (finding waiver of privilege where the FDIC alleged that federal regulators disapproved of the defendants' policies prior to the litigation at issue). The United States' assessment of the lawfulness or unlawfulness of Defendants' activities is simply not relevant prior to its commencement litigation on December 23, 2009. *See Doc. 1.*

Defendants offer no reason why the Government's alleged earlier decision not to prosecute is relevant. They merely assert, without explanation, that evidence of the alleged earlier decision, if it exists, "plainly undercuts" the Government's claims that Defendants' conduct was unlawful. *See Doc. 256* at 2. The Court disagrees. Even if true, the decision not to prosecute Defendants in 2004 is not relevant to any of the present claims and defenses. As the United States points out, its decision not to prosecute at any given point does not constitute evidence that the law was not violated. *See Doc. 262* at 12.

Likewise, with respect to Defendants' RFP No. 20 , the Federal Rules of Evidence limit the relevance of the requested information as a matter of law, providing that the requested information "is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408(a). Thus, none of the requested information – not "the notes, emails, drafts, revisions, calculations" – of the United States regarding the 2002 Settlement Agreement, is relevant  for the purposes that Defendants have pursued it in this case. *See Doc. 257-1* at 6.

Defendants contend that the United States has previously sought to compel documents related to the Settlement Agreement. *See Doc. 257* at 4. However, the United States' request was limited to information as to whether the settlement proceeds were received and by whom. *See Doc. 218* at 26-27 (concerning the Government's RFP No. 114 to Copar and No. 122 to the Individual Defendants). Fed. R. Evid. 408 does not affect post-settlement actions, such as the distribution of proceeds. Defendants also argue that the United States' pre-settlement calculations of compensation owed is "relevant to defeat the U.S.'s claim that it already paid Defendants for the pumice at issue here." *See Doc. 257* at 4. With this argument, Defendants only admit that RFP No. 20 seeks settlement information in order "to prove or disprove the validity or amount of a disputed claim." FED. R. EVID. 408(a).

Lacking some basis upon which to find that the information and documents requested in Interrogatory No. 16 and RFP Nos. 20, 21, and 22 are relevant, the Court finds that the United States' Motion for Protective Order *(Doc. 233)* is well-taken and should be granted. For the same reasons, Defendants' Motion to Compel *(Doc. 257)* is not well-taken and will be denied to the extent it seeks to compel discovery in response to Interrogatory No. 16 and RFP Nos. 20, 21, and 22.

> **B.     Attorney-Client Privilege and Work Product Doctrine Apply to the Government's Pre-Litigation Discussions About Possible Action Against Defendants and the 2002 Settlement of Earlier Claims, and These Protections Were Never Waived by the United States.**

Defendants do not argue that the attorney-client privilege and/or work-product doctrine are inapplicable to the documents requested. Indeed, Defendants do not address the work-product doctrine at all. *See generally Doc. 256.* As to the attorney-client privilege, Defendants admit the privilege potentially applies but argue that the United States waived the privilege in two ways. First, Defendants contend that the United States waived its attorney-client privilege

by failing to produce a privilege log.  *See Doc. 256* at 4.  Second, Defendants argue that the

United States waived its privilege when one of its attorneys, Patricia Disert, allegedly advised

Defendants' prior attorney that "she asked the Department of Justice (U.S. Attorney's office) to

prosecute the trespass claim and was turned down."  *See Doc. 256-1* at  3.

     The Government responds to the first of these allegations, arguing that the burden of

cataloging their voluminous litigation files outweighs any benefit considering that the requested

documents are not relevant.  *See Doc. 262* at 5.  Further, the Government argues that where the

privileged nature of a request is obvious, no privilege log should be required.  *See id.* (quoting

*Cincinnati Ins. Co. v. M.S. ex rel. Serrano*, No. 11-CV-2075-JAR/KGG, 2011 WL 6304086, at

\*9 (D. Kan. Dec. 16, 2011)).  With regard to Defendants' second waiver argument, the United

States points out that the only evidence of Ms. Disert's alleged waiver is non-specific hearsay

and attaches an affidavit from Ms. Disert, stating she has no recollection of any such comment.

### 1.    *A privilege log is not required for Interrogatory No. 16 or Requests for Production Nos. 20, 21 and 22.*

    "[F]ailure to provide a privilege log or production of an inadequate privilege log may be

deemed waiver of the privilege."  *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 650

(quoting *Thelen Reid & Priest LLP v. Marland*, No. C 06-2071, 2007 WL 578989, at \*9-10

(N.D.Cal.) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. District Court for Dist. Of Mont.*,

408 F.3d 1142 (9th Cir. 2005))).  The Ninth Circuit Court of Appeals, in a case cited with

approval in this District, has held that courts considering such a waiver should make a case-by-

case determination, taking the following factors into account: (1) the degree to which the

objections or assertions of privilege enable the litigant seeking discovery and the court to

evaluate whether each of the withheld documents is privileged; (2) the timeliness of the

objection and accompanying information about the withheld documents; and (3) the magnitude

of the document production and other particular circumstances of the litigation that make

responding to discovery unusually easy or difficult. *Burlington Northern*, 408 F.3d at 1149.

"These factors should be applied in the context of a holistic reasonableness analysis, intended to

forestall needless waste of time and resources, as well as tactical manipulation of the rules and

the discovery process. They should not be applied as a mechanistic determination of whether the

information is provided in a particular format." *Id.*

Cases within the Tenth Circuit that have found waiver due to the failure to produce a

privilege log typically find that the producing party failed to produce a privilege log for an

unreasonable amount of time. *See, e.g., Starlight Intern. Inc. v. Herlihy*, 1998 WL 329268 at *3

(D.Kan. June 16, 1998) (noting that the responding party "made no attempt to comply with Rule

26(b)(5) even in their response to a motion to compel and finding that the party's subsequent

"offer to do so comes too late to save their objection of privilege").

Where the discovery requests plainly seek communications between a client and its legal

counsel, however, a privilege log may not be necessary.

> Rule 26(b)(5) requires that protected information be described in a
> way adequate for the other party to assess the claim of privilege.
> When this can be accomplished without a formal 'privilege log,'
> one is not required. The present case is one in which, because the
> discovery requests directly ask for communications between
> attorney and client as well as obvious work product documents, the
> privileged nature of the requests is obvious from the requests
> themselves.

*Cincinnati Ins. Co. v. MS ex rel. Serrano*, No. 11-CV-2075-JAR/KGG, 2011 WL 6304086 at *9

(D. Kan. Dec. 16, 2011).

In the present case, Defendants ask the United States to list occasions on which the Forest

Service asked its counsel or the U.S. Attorney's office to sue Defendants and, further, to "fully

state" its attorneys' response. *See Doc. 257-1* at 1. By its very terms, Interrogatory No. 16 asks

for communications between attorney and client and obviously seeks communications "made for the purpose of facilitating the rendition of professional legal services to the client." Rule 11-503(B) NMRA 2012. RFP Nos. 21 and 22 suffer the same problem. RFP No. 21 asks for documents "pertaining to the Forest Service's requests to its counsel in the U.S. Attorney's office to institute legal proceedings against defendant or to the U.S. attorney's responses thereto." *Doc. 257-1* at 7. Likewise, RFP No. 22 asks for "all documents pertaining to legal advice or communications given to the Forest Service pertaining to the institution of legal proceedings against Defendants." Both Requests very clearly seek production of documents to which the attorney-client privilege and/or work product protection would apply.

Although RFP No. 20 seeks documents related to the parties' 2002 Settlement Agreement rather than specific discussions between the Forest Service and its attorneys, I find that it, too, seeks obviously privileged information. RFP No. 20 asks for drafts and revisions to the Settlement Agreement in addition to underlying calculations of amounts owed to Defendants by the Government and correspondence, notes and e-mails related to the same. *See Doc. 257-1* at 6. As such, RFP No. 20 also clearly seeks information protected either by the attorney-client privilege or the work-product doctrine. Accordingly, the requirements of Rule 26(b)(5) are met with respect to Interrogatory No. 16 and RFP Nos. 20, 21, and 22. The parties are capable of assessing the applicability of the privilege without a description of the documents at issue.

Beyond the lack of necessity for a privilege log, I also note that this is not a case in which the United States has been dilatory about preparing a privilege log. Here, it appears the United States filed its Motion for Protective Order *before* submitting its discovery responses to Defendants. *See Doc. 233* (filed June 25, 2012); *Doc. 257-1* at 11 (certifying that the United States' responses were served on June 27, 2012).

**2.      *The alleged hearsay statements of Ms. Disert of the Forest Service do not constitute a waiver of privilege or work product protection.***

As the Court has previously noted, the Tenth Circuit has recognized there are three

approaches to determining whether a waiver of privilege has occurred.  *See Doc. 167* at 8; *Doc.*

*221* at 9-11.  Although the Tenth Circuit has not determined which of these approaches it would

follow, at least three judges within the District of New Mexico, including myself, have reasoned

that it most likely will follow that articulated in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash.

1975).  *See Docs. 167, 221; Anchondo v. Anderson, Crenshaw & Assocs.*, 256 F.R.D. 661, 670

(D.N.M. 2009).  Under the *Hearn* approach, three elements are required to establish waiver:

> (1) assertion of the privilege was a result of some affirmative act,
> such as filing suit, by the asserting party; (2) through this
> affirmative act, the asserting party put the protected information at
> issue by making it relevant to the case; and (3) application of the
> privilege would have denied the opposing party access to
> information vital to his defense.

*Hearn*, 68 F.R.D. at 581.

Exactly none of the elements are present with regard to the documents and information

requested in Interrogatory No. 16 and RFP Nos. 21 and 22 relating to allegedly unsuccessful

efforts by the Forest Service to persuade the United States Attorney's office to initiate litigation

against Defendants.  First, the United States has asserted the privilege only in response to

Defendants' request for the privilege information.  Second, it is not the United States, but

Defendants who have put the matter at issue.  Even if Ms. Disert made the type of statement that

Defendants allege, the statement occurred in 2004, some three or four years before the United

States commenced this litigation.  Third, Defendants have identified no way in which the

requested information is relevant, let alone "vital to [their] defense."  There is no basis for

finding that the Government has waived its attorney-client privilege or work product protection.

Accordingly, the Court finds that the Government's Motion for Protective Order is well-taken and should be granted.

> **C.** **Considering the Lack of Relevance of the Requested Information and Documents and the Obvious Applicability of Attorney-Client Privilege, the Court Will Not Reach the Question Whether the Deliberative Process Privilege Applies.**

Defendants' oppose potential application of the deliberative process privilege, arguing that it is inapplicable under New Mexico law. *See Doc. 256* at 8 (citing *Republican Party of New Mexico v. New Mexico Tax and Rev. Dept.*, 283 P.3d 853 (N.M. 2012)). While I have already stated that it is federal law, rather than New Mexico law, that determines the nature and scope of applicable privileges, I note Defendants' argument that the deliberative process privilege is and should be reserved to "public policy formulation at the higher levels of government." *See Doc. 256* at 9. I have already found that the requested information is outside of the allowable scope of discovery and subject to the attorney-client privilege and/or work product doctrine, which have not been waived. Given these rulings, I believe it neither necessary nor beneficial to delve into a lengthy analysis of the deliberative process privilege.

> **D.** **The United States Has Adequately Responded to Interrogatory No. 17 and RFP Nos. 24 and 26 Pertaining to "Verifiable Proof" of the Use of Pumice in the Laundry Industry.**

Interrogatory No. 17 asks the Government to "identify what constitutes 'adequate verifiable proof of the stonewash laundry industry use' of the pumice removed from the El Cajete Mine, as provided in Paragraph 20 of the Amended Complaint." *See Doc. 257-1* at 2. However, there is no reference to "adequate verifiable proof of the stonewash laundry industry use in Paragraph 20 or elsewhere in the Amended Complaint. *See generally Doc. 22.* Because of this discrepancy, the United States reasonably objected to the Interrogatory No. 17 on the grounds that it is ambiguous and fully explained the basis of its objection. *See Doc. 257-1* at 2.

Nonetheless, the Government acknowledged that it quoted a Notice of Noncompliance issued to

Defendant Copar by the Santa Fe National Forest for "failing to provide 'verifiable proof of the

stonewash industry use'" of pumice in Paragraph 30.  *See Docs. 257-1 at 2; 264 at 6.*  It then

went on to respond to Interrogatory No. 17, stating that "verifiable proof" is "evidence tending to

establish the truth of something" and noting that it should be "capable of verification."  *See Doc.*

*257-1 at 2-3.*  Moreover, the United States also indicated that the subject Notice of

Noncompliance "explained what it then believed would constitute verifiable proof."  *Id.* at 3.

RFP Nos. 24 and 26 seek documents supporting or defining "adequate verifiable proof" or

verification of end use in general.  *See id.* at 8-10.  In response, the United States refers

Defendants to standards already produced and again set forth in answer to Interrogatory No. 19.

*See id.* at 8-10, 4-5.

Although the Defendants complain that the United States' answer "fails to set forth *any*

measurable or objective standards regarding proof," Defendants do not identify what more the

Government could do to respond to Interrogatory No. 17 or RFP Nos. 24 and 26.  Likewise, the

Court is unable to fathom what more, if anything, the Government could do to respond.

Defendants' Motion to Compel will therefore be denied as to Interrogatory No. 17 and RFP Nos.

24 and 26.

### E.    The United States Has Likewise Fully Responded to Interrogatory No. 19 and RFP No. 23 Concerning Disposition of Waste Products.

Interrogatory No. 19 asks the Government to "state how waste which resulted from the

transportation, screening and processing of the ¾"+ pumice removed from the El Cajete Mine

was to be disposed of."  *See Doc. 257-1 at 4.*  RFP No. 23 asks for documents pertaining to any

communications identified in response to Interrogatory No. 19.  Defendants contend that the

Government's responses are inadequate because they do not "address the disposition of the

waste … created during offsite processing which was not suitable for use in the laundry industry." *See Doc. 257* at 3.  The United States indicates, however, that its view of the Plan of Operations is that Defendants were required to "leave all pumice of a smaller size—which includes any waste pumice—at the mine site." *Doc. 264* at 10.  Given the United States' position, the Court cannot find that it is has withheld information or documents responsive to Interrogatory No. 19 or RFP No. 23.  Defendants' Motion *(Doc. 257)* must therefore be denied as to Interrogatory No. 19 and RFP No. 23.

## IV.    CONCLUSION

As set forth herein, I find that the United States' Motion for Protective Order *(Doc. 233)* is well-taken and should be granted.  Meanwhile, Defendants' Motion to Compel *(Doc. 257)* is not well-taken and should be denied.

IT IS THEREFORE ORDERED that the United States' Motion for Protective Order *(Doc. 233)* is granted.  No further answers or responses are required regarding Defendants' Interrogatory No. 16 and RFP Nos. 20, 21, and 22.

IT IS FURTHER ORDERED that Defendants' Motion to Compel *(Doc. 257)*, to the extent it is not mooted by my decision to grant the United States' Protective Order, is denied.

_____
**CHIEF UNITED STATES MAGISTRATE JUDGE**