UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
       v.                          )        Civ. No. 1:09-CV-01201-JAP-KBM
                                   )
COPAR PUMICE COMPANY, INC.,        )
KELLY ARMSTRONG, RICHARD P. COOK,  )
SHIRLEY A. COOK, and DEBBIE CANTRUP, )
                                   )
            Defendants.            )
_____)

**THE UNITED STATES RESPONSE TO**
**DEFENDANTS' MOTION FOR PROTECTIVE ORDER, Doc. 316**

The United States submits this response in opposition to Defendants' Motion for

Protective Order, Doc. 316.  Despite the United States repeated attempts to compromise and

work with Defendants in setting Copar's 30(b)(6) deposition, Defendants continue to resist the

30(b)(6) deposition regarding Copar's finances, computer and e-mail systems, and

communications with its attorney, Scott Hall.  In so resisting, Defendants refuse to acknowledge

that Kelly Armstrong was sued in her personal capacity.  Copar also seeks to unduly narrow the

scope of the 30(b)(6) deposition.  Moreover, Defendants filed their motion just over one full

business day before the date of the properly scheduled deposition, and was therefore a willful

failure to appear pursuant to D.N.M. LR-Civ. 30.2 and Fed. R. Civ. P. 37(d).

**BACKGROUND**

On Friday, March 22, 2013, the United States requested dates from Defendants for a

30(b)(6) deposition and provided the topics to be explored.  Exhibit 1 at Ecf. p. 1.  When

Defendants did not respond, the United States called Defendants' attorney requesting a date for

the deposition.  Exhibit 1 at Ecf. p. 2.  When Defendants declined to provide a date for the 30(b)(6) deposition, the United States scheduled and noticed the depositions.  Exhibit 1 at Ecf. p. 3.  The United States anticipated that Kelly Armstrong may be designated for the 30(b)(6) seeking financial information, but based upon her deposition testimony, she would be unable to respond to questions about mining and processing operations.  Based upon that assumption, which Defendants ultimately confirmed was correct, the United States broke up the 30(b)(6) into two depositions – one seeking financial information, the other seeking mining and processing information.  *Id.*

Defendants objected to the date of the 30(b)(6) depositions.  Exhibit 1 at Ecf. p. 4.  The United States offered to work with Defendants on a date if Copar would agree to produce a witnesses.  Exhibit 1 at Ecf. p. 5.  Defendants declined to either agree that Copar would produce witnesses in response to the 30(b)(6) or to provide an alternative date.  Exhibit 1 at Ecf. p. 6. Instead, Defendants stated their objections to the Notices.  *Id.*  Defendants asserted that it "would be improper to use the device of a Rule 30(b)(6) deposition to retake Ms. Armstrongs's deposition."  *Id.*  Defendants also claimed that the topics 1 (regarding Copar's accounting and financial systems), 2 (regarding Copar's systems for maintaining financial information), 4 (financial transactions between Copar and any of the individual Defendants or the individual Defendants' companies), and 6 (regarding Copar's tax returns) were overbroad.  *Id.*

In an attempt to address Defendants concerns, the United States served amended Notices of 30(b)(6) Depositions Exhibit 1 at Ecf. pp. 7-13.  First, the United States limited the timeframe to the timeframe previously set forth by this Court—from 2002 to the present.  Exhibit 1 at Ecf. pp. 10, 13.  Additionally, the United States clarified its request for information on Copar's accounting system to make clear that the United States did not intend to ask questions regarding

every entry.  Exhibit 1 at Ecf. p. 10.  The United States reminded Defendants that it would reschedule the depositions as long as Copar agreed to make its witnesses available at the rescheduled date.  Exhibit 1 at Ecf. p. 7.  Finally, the United States noted that Kelly Armstrong's deposition was taken in her personal capacity and that she denied knowledge of most of those topics that were covered in her depositions.  *Id.*

After not receiving a response to the United States amended 30(b)(6) notices and not having received a motion for protective order, on April 4, 2013, the Thursday before the previously scheduled 30(b)(6) on the following Monday, the United States asked Defendants if a witness would appear for the depositions.  Exhibit 1 at Ecf. p. 14.  Defendants indicated that Copar would not produce a witness on Monday, April 8, 2013 or Monday, April 15, 2013.  Exhibit 1 at Ecf. p. 15.  Defendants further expressed dissatisfaction of having the two 30(b)(6) depositions a week a part.  *Id.*  Defendants requested that the United States modify topic 2 in a similar fashion as it did topic 1.  *Id.*  Defendants filed their Motion for Protective Order on the same date.  Doc. 316.

The United States continued to try to reach an agreement with Defendants regarding the 30(b)(6) depositions.  The United States renewed its offer to reschedule the depositions if Copar would agree to produce witnesses.  Exhibit 1 at Ecf. p. 16.  Copar acknowledged that it would have to provide two different witnesses for the depositions.  Exhibit 1 at Ecf. p. 13  The United States noted to Defendants that the comments to the Federal Rules state that the 7 hour time limit applies to each witness designated pursuant to the 30(b)(6).  *Id.*  However, the United States offered to reschedule the depositions back to back as Copar appeared to prefer.  *Id.*  The United States reiterated its preference that the depositions take place in Albuquerque.  *Id.*  The United States also agreed to limit topic 2 as requested by Defendants.  *Id.*

3

Defendants again objected to the date of the depositions and objected to "two separate full day depositions."  Exhibit 1 at Ecf. p. 17.  Defendants complained that Ms. Armstrong would have to appear for both 30(b)(6) depositions because she would provide the testimony regarding e-mail.  *Id.*  Defendants further requested that the United States further limit topic 7 regarding tax returns and for the first time, requested the United States to limit topics 2 and 5 on the second request.  *Id.*  The United States asked Defendants to tell it what witnesses would respond to which topics to avoid one witness having to appear twice in response to both 30(b)(6) deposition notices.  Exhibit 1 at Ecf. p. 18.  The United States further agreed "[a]ssuming you designate Ruben Velasquo as one of the witnesses, we agree to depose him for no more than seven hours covering the 30(b)(6) topics and any other questions we may have for him personally."  *Id.*

On April 10, 2013, the United States requested dates for the 30(b)(6) deposition on financial topics to be scheduled the same week as mediation to avoid the burden and expense for DOJ Trial Attorney Dominika Tarczynska to make two separate trips to Albuquerque.  Exhibit 1 at Ecf. p. 19.  Defendants requested that the United States provide more specific regarding questions regarding Copar's tax returns and again insisted that the 30(b)(6) depositions take place in Espanola.  Exhibit 1 at Ecf. p. 20.  The United States responded that DOJ Trial Attorney Dominika Tarczynska was going to be coming from Washington, DC to take the depositions and it would be difficult for her to then travel to Espanola.  Exhibit 1 at Ecf. p. 21.  The United States offered to take the deposition of Ruben Velasco (the person Copar indicated it would designate for the 30(b)(6) on mining and operations) in Santa Fe.  *Id.*  Copar agreed to the 30(b)(6) deposition regarding mining and processing operations to take place in Santa Fe and said that they would provide dates.  Exhibit 1 at Ecf. p. 22.

When the United States did not hear back from Defendants regarding a date for the 30(b)(6) deposition on mining and processing operations, the United States scheduled the 30(b)(6) deposition, followed by the deposition of Ruben Velasco.  Exhibit 1 at Ecf. pp. 23-27.  Since the United States had anticipated that it would depose Ruben Velasco as a witness, the United States agreed that it would notice the 30(b)(6) deposition regarding mining and processing operations followed by the deposition of Ruben Velasco and limit the total time for both to 7 hours.  *Id.*  Defendants have not indicated any objections to the depositions but rather stated that "May 8th is ok for Ruben Velasco."  Exhibit 1 at Ecf. p. 30.

Again, on April 15, 2013, the United States asked Defendants about the 30(b)(6) deposition on financial topics the same week as the scheduled mediation.  Exhibit 1 at Ecf. p. 29.  Defendants requested to see the list of topics, which the United States promptly provided.  Exhibit 1 at Ecf. pp. 30, 31.  The United States clarified Topics 1, 2, and 6, as requested by Defendants.  *Id.*  Defendants did not respond to the United States request.

On April 17, 2013, the United States again requested dates for the 30(b)(6) deposition on Copar's finances, noting that if the parties could not come to an agreement, the United States would have to respond to the Motion for Protective Order.  Exhibit 1 at Ecf. p. 32.  On April 18, 2013, Defendants stated that Ms. Armstrong could be available on May 14, 2013, but continued to object to the topics of the 30(b)(6).  Exhibit 1 at Ecf. p. 33.  For the first time, Copar objected to the 2002 to present time frame and to 9 regarding legal advice Scott Hall gave to Copar.  Copar also stated that topic 9 regarding legal advice provided by Scott Hall was duplicative.  *Id.*  Copar was also still unsatisfied with topic 6 regarding Copar's taxes.  *Id.*  While Copar agreed to producing "witnesses on two separate days, it does so without waiver of objections to being subjected to multiple depositions."  *Id.*

5

The United States requested that the parties agree to a quick status conference with the Court to resolve Defendants objections.  Exhibit 1 at Ecf. p. 34.  Defendants declined to respond to the United States request.  Exhibit 1at Ecf. p. 35.  Defendants refusal to bring the matter to the Court's attention for a quick resolution, along with its ever changing objections to the 30(b)(6) depositions brings into question Defendants' motives for filing this Motion for Protective Order.  Nonetheless, as set forth here, the 30(b)(6) deposition topics are appropriate and relevant to the United States' claims in this action.  Defendants' Motion should be denied and Defendants should be found in bad faith for failing to appear at the scheduled depositions.

## POINTS AND AUTHORITIES

A.    <u>The 30(B)(6) Notice Does Not Seek Duplicative Or Cumulative Testimony.</u>

Kelly Armstrong, Richard Cook, Shirley Cook, and Debbie Cantrup were each deposed in their individual capacity.   The United States deposed each regarding information each personally and specifically held.  Defendants did not raise objections about the length of the depositions either before or during the individual's depositions.  Kelly Armstrong's deposition lasted approximately 10 hours and the length of the deposition was largely due to Ms. Armstrong's refusal to answer the questions posed to her.  The United States does not seek to re-depose any of these individuals.

After the individual Defendants' depositions, the United States served notices of 30(b)(6) depositions.   The depositions were broken into topics based upon the witnesses Defendants indicated would be offered to address each topic.  Defendants informed the United States that Copar would produce Kelly Armstrong to testify regarding the financial topics, Copar's computer and e-mail systems, and communications with Copar's attorney Scott Hall.  Defendants further informed the United States that Ruben Velasco would be designated as the

6

witness to testify regarding mining and processing operations.  The United States did not play any role in designating the person(s) who would be designated to answer questions regarding the topics listed.

Ms. Armstrong's deposition demonstrates that she was aware that she was being deposed in her personal capacity as she was not prepared to answer questions regarding corporate knowledge.  Specifically, Ms. Armstrong did not know whether her attorneys advised her that Copar's mining from El Cajete min for pumice sold outside the laundry industry violated federal law.  Doc. 316-5 at 2-3, 8 (deposition page 205, line 22, to page 206, line 3; page 206, lines 8-13; page 247, lines 14-20).  Ms. Armstrong could not say for sure whether Mr. Hall was one of Copar's attorneys.  Doc. 316-5 at 10 (deposition page 250, lines 1-10).  Ms. Armstrong did not know whether a letter from Scott Hall to her accurately reflected a conversation Ms. Armstrong had with Mr. Scott.  Doc. 316-5 at 11 (deposition page 270, line 20 to page 271 line 8).  Ms. Armstrong did not know when Copar was first advised by an attorney to stop crushing pumice from El Cajete.  Doc. 316-5 at 11 (deposition page 272, lines 8-12).  She does not know whether she or the mining manager, Ric Bell, told Mr. Hall that Copar would quit crushing pumice from El Cajete.  Doc. 316-5 at 13 (deposition page 279, lines 8-17).  Ms. Armstrong testified that she had not seen letters written by her attorney, Scott Hall, on behalf of Copar, to the Forest Service, wherein it is indicated that Ms. Armstrong was copied.  Doc. 316-5 at 13, 16 (deposition page 250, lines 8-12; page 292, lines 6-25).  Nor does Ms. Armstrong know whether Mr. Hall's statement to the Forest Service in May 2004 that Copar had quit crushing pumice was accurate or where he got that information from.  Doc. 316-5 at 17 (deposition page 294, line 12, to page 295, line 18).

Ms. Armstrong did not review Copar's accounting records in preparation for her deposition. Exhibit 2 at Ecf. p. 2. Ms. Armstrong did not know whether or how Copar preserved it records or whether it has records as far back as 2002. Exhibit 2 at Ecf. pp. 3-4. Ms. Armstrong did not know whether her accountant preserved Copar's taxes. Exhibit 2 at Ecf. p. 5. Ms. Armstrong did not know how inaccurate information regarding her percentage of ownership of Copar made its way into Copar's tax returns. Exhibit 2 at Ecf. pp. 10-11 ("I'm believe that they put that there, so I'm just as amazed at that as you are")). Ms. Armstrong did not know whether Copar was profitable. Doc. 316-5 at 9 (deposition page 266, line 23 to page 267, line 3); She could not say whether Copar's profits, if any, would have included income from sales to PPC. Doc. 316-5 at 10 (deposition page 250, lines 17-24).

Ms. Armstrong did not have information about how Copar produced general ledgers to the United States in this litigation with the most relevant information redacted. Exhibit 2 at Ecf. pp. 6-9.

Ms. Armstrong knew even less about the mining and processing operations. Ms. Armstrong did not know how much pumice was removed from El Cajete. Exhibit 2 at Ecf. pp. 14. Ms. Armstrong did not know how it was decided where on El Cajete mine the pumice would be mined. *Id.* She did not have anything to do with how to adjust the screens to ensure the maximum amount of undersized pumice stayed at the mine. Exhibit 2 at Ecf. p. 19. Once the pumice was screened, Ms. Armstrong did not know what would be done with the separate piles, where it would be processed, or how it would be handled after it was screened. Exhibit 2 at Ecf. p. 20. Specifically, Ms. Armstrong did not know how the truckers decided from which piles pumice would be loaded into their truck or how it was determined which processing plant the truckers would bring the pumice. Exhibit 2 at Ecf. pp. 21-24. She could not say whether pumice

8

from El Cajete was crushed.  Doc. 316-5 at 10 (deposition page 251, lines 20, to page 252, line 4).  Plainly, Ms. Armstrong was not prepared to answer questions about Copar's business operations.

Copar has an obligation to produce a witness that is a knowledgeable representative. *Ecclesiastes 9:10-11-12 v. LMC Holding Co.*, 497 F.3d 1135, 1146-47 (10th Cir. 2007).  Copar further has an obligation to prepare its witness to testify as to the organization's collective knowledge and information.  *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524 (D. Kan. 2006); *Skyline Potato Co. v. Tan-O-On Marketing, Inc.*, No. CIV 10-0698 JB/RHS,2012 WL 3150385, at *5 (D.N.M. July 30, 2012).  If no single individual can provide the corporation's testimony as to all the designated topics, the corporation must name more than one representative.  *Skyline Potato*, 2012 WL 3150385, at *1.  Plainly, Kelly Armstrong was not prepared to testify on behalf of Copar at the time of her deposition.  Accordingly, Copar's motion for protective order should be denied and Copar should be compelled to produce one or more witnesses to testify on behalf of Copar pursuant to the Rule 30(b)(6) Notices of Deposition.

B.      The Subjects Of The 30(B)(6) Are Specific.

The United States has modified topics 1 and 2 (regarding accounting and financial systems and Copar's financial reports), apparently to Copar's satisfaction.

Copar complains that the United States' request for a witness to testify regarding all transactions with Valley National Bank and other Cook family businesses is "overbroad and compliance is impossible."  Copar's complaint about the requested topic supports the United States' reason for the request—Copar and the other Cook family businesses actually operated as one business, regularly transferring funds between the businesses.  In order to fully understand how the individual Defendants profited from Copar's illegal mining operations, the United States

9

needs to understand why there were so many transfers of funds between the individual Defendants and their family businesses. As Ms. Armstrong testified, "we're [meaning Copar] a family business, and wherever the money is, we're going to borrow it, you know. If we need it somewhere else, [Mr. Cook] might need to pay taxes, [Mr. Cook] might need to do something with it. I don't know." Exhibit 2 at Ecf. p. 9. Since neither Armstrong, nor any of the other Defendants can explain whether Copar made a profit, and if so, how much, and where it went, the United States is entitled to obtain that information in a 30(b)(6) deposition.

Similarly, the United States is entitled to inquire regarding the information contained on Copar's tax returns and how those tax returns were prepared. This includes information into the amount of Copar's income earned from its pumice mining activities, the costs and expenses it deducted, its profits or losses, and its liabilities. Such information is clearly relevant to the United States' damages in this action. While the individual Defendants testified they had never received royalty payments from Copar, their personal tax returns indicate differently. Doc. 316-5 at 5. As with transactions regarding family members and family businesses, questions regarding Copar's tax returns are very important to determine what Copar earned, from where, and to where it went. Moreover, the United States is clearly entitled to inquire about who owns Copar and why Copar's tax returns indicated that Ms. Armstrong owns 25% of Copar and her sister Ms. Katharine Cook Fishman owns 0%--while Defendants have been representing throughout this litigation that each is a one-third owner of Copar. *See* Exhibit 2 at Ecf. p. 10-12. A question that Ms. Armstrong was unable to answer during her deposition. Defendants do not claim that this information is not relevant to the United States' claims or otherwise an improper subject of discovery.

10

Copar further objects to providing financial information through to the present. However, as Ms. Armstrong made clear in her deposition, the Cooks do not hesitate to take from one company and give to another company or an individual Defendant.  There is no reason to believe that this activity did not continue to the present.  Certainly, the United States should be able to determine whether it did.  Additionally, the United States is entitled to know how long Copar continued to sell El Cajete pumice, even if the last sale was yesterday.  Defendants initially represented that the last sale was in 2008, but when Copar produced its general ledgers from 2011, they showed sales on January 31, 2011.  Doc. 93 at 2, ¶ 6.  No financial documents have been produced for 2012, so the United States has no way of knowing if there were not additional pumice sales that Copar has not reported.  Exhibit 2 at Ecf. p. 13 (Armstrong testified that she would have to look at Copar's records to determine when the last sale of pumice was made).  The only way the United States is able to determine the extent to which the individual Defendants profited from Copar's illegal mining is to learn how Copar and the Cook family businesses moved money from 2002 to the present.

Presumably, Copar has the information necessary to prepare for the 30(b)(6) depositions. It has a duty to gather the information and prepare its representative so that the representative can give complete, knowledgeable, and binding testimony regarding Copar's tax returns and transactions Copar had with the other Defendants and the Cook family businesses.  *Brazon River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006); *Skyline Potato*, 2012 WL 3150385, at *5 ("Even if the documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.") (quoted authority omitted); *Radian Asset Assur., Inc. v. College of the Christain Bros. of New Mexico*, 273 F.R.D. 689, 691 (D.N.M. 2011) (court denied motion for protective

11

order to exclude a certain number of the 52 topics listed in the 30(b)(6), noting "to limit the 30(b)(6) deposition as the College suggests would lead to endless disputes and undercut the utility of this important device against corporations."). These topics are narrowed to achieve their purpose—to determine how much the individual Defendants profited from Copar's illegal mining operations, and Copar should be compelled to provide a witness to respond to the requested information.

Copar's objections to providing a witness to testify regarding conversations with its attorneys has already been ruled upon and decided by this Court. Attorney Scott Hall represented to the Forest Company that Copar had ceased crushing El Cajete pumice and ceased selling El Cajete pumice outside the laundry industry. Exhibit 2 at Ecf. pp. 16, 17. Ms. Armstrong does not know whether Mr. Hall had advised Copar to cease, or whether Copar represented to its attorney that it would cease, prior to his representation to the Forest Service, selling pumice outside the laundry industry. If Ms. Armstrong is unable to provide such testimony, Copar needs to produce its attorneys or another representative that could provide Copar's corporate knowledge concerning legal advice it received from Attorney Scott Hall regarding the mining and sale of common variety pumice.

In e-mail correspondence, Copar objected to the timeframe of the request regarding communications with Scott Hall. This objection is hollow, as Scott Hall has not represented Copar in the last few years. Additionally, the United States is entitled to learn what legal advice Copar was receiving during the entire period Copar processed and/or sold pumice from El Cajete.

It appears that Copar is no longer objecting to the topics listed in the 30(b)(6) covering mining and processing operations, since Copar has agreed to make a witness available without limiting the scope of the deposition beyond that stated in the notice.  Exhibit 1at Ecf. p. 35.

The topics covered in the United States 30(b)(6) depositions directed to Copar are specific and a proper subject of discovery.  Accordingly, the United States requests this Court to compel Copar to produce witnesses for the depositions.

C.    Defendant May Designate Whomever It Likes For The 30(b)(6) Depositions, But Each Witness Designated Is Subject To A Separate 7 Hour Limit.

Pursuant to the comments to Rule 30 of the Federal Rules of Civil Procedure, the "presumptive durational limitation of one day of seven hours for any deposition" applies to "each person designated under Rule 30(b)(6)."  In other words, for the duration limit, each person designated under Rule 30(b)(6) is "considered a separate deposition."  Fed. R. Civ. P. 30, 2000 Amendment Comments, Subdivision (d).  *See also, Radian Asset Assur., Inc. v. College of the Christian Bros*, No. CIV 09–0885 JB/DJS, 2010 WL 5476782 at *3 (D.N.M. Nov. 24, 2010) (holding that 7 hours is allowed for each 30(b)(6) witness).  Should Copar designate one witness who would testify regarding all of the topics listed in the 30(b)(6) Notices, the United States agrees that the Federal Rules provide that the duration limit is one day of seven hours.  However, according to Defendants, Copar intends to offer at least two separate witnesses to cover the topics listed in the United States 30(b)(6) notices.  Should Copar offer more than one witnesses, the duration limit of one day of seven hours applies to each witness designated.

Defendants are mistaken that the United States is "seeking to re-depose an already-deposed witness."  Doc. 316 at 4.  Pursuant to the Federal Rules, Copar—not the United States—designates its witness in response to the 30(b)(6) Notice.  If Copar offers Kelly Armstrong as its

witness, that is Copar's choice.  The United States is simply seeking discovery on particular topics and it is up to Copar to determine who will provide the requested testimony.  *See, United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996) ("The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents."); *Taylor v. Shaw*, No. 2:04-cv-01668-LDG-LRL,  2007 WL 710186, at *1 (D. Nev. March 7, 2007) ("A deposition of an individual and a deposition of the same person as a representative of the organization are two distinct matters.  Rule 30 allows depositions of a witness in his individual capacity and in an organizational capacity because the depositions serve distinct purposes and impose different obligations.").

It appears that Copar no longer objects to allowing the 30(b)(6) depositions to take place on two separate days.  Exhibit 1 at Ecf. p. 35.  This makes sense here.  While the United States has separated its 30(b)(6) topics into two separate depositions, it did so because Copar indicated it was to produce two separate witnesses.  When Copar indicated that Kelly Armstrong would address topics in both of the Notices, the United States re-noticed the depositions, including all of the topics Copar believed Kelly Armstrong would address into one notice.  Moreover, when Defendants objected to the two 30(b)(6) depositions being taken one week apart, the United States agreed to schedule the depositions back to back.  Exhibit 1 at Ecf. p. 16.  Unlike the cases cited by Defendants, the United States has not taken any 30(b)(6) depositions.  Moreover, unlike the cases cited by Defendants, the topics in the two notices are not duplicative.  Defendants must have determined, for these reasons, that it would not object to the two 30(b)(6) depositions to take place on two days.  *See Quality Aero Technology, Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) (no need to seek leave of court to take second 30(b)(6) deposition that "seek[s] information relating to different subject areas"); *Loops LLC v. Phoenix*

*Trading, Inc.*, No. C08-1064 RSM, 2010 WL 786030, at *2 (W.D. Wash. March 4, 2010) (same); *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08–C–16 2009 WL 2870622, at *1 (E.D. Wis. Sept. 2, 2009)(same).

D.      The Locations Of The Depositions In Santa Fe And Albuquerque Are Reasonable.

It appears that the parties have agreed upon the location of the 30(b)(6) depositions. Exhibit 1 at Ecf. pp. 21-22.   The 30(b)(6) deposition directed to mining and processing operations will take place in Santa Fe, and the 30(b)(6) deposition directed at Copar's finances will take place in Albuquerque.  This agreement is consistent with New Mexico caselaw.

Pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, the party noticing a deposition generally sets the time and place of the deposition.  Fed. R. Civ. P. 30(b)(1) ("A party who wants to depose a person by oral questions must give reasonable written notice to every other party.  The notice must state the time and place of the deposition . . ."); *Radian Asset Assurance, Inc. v. College of the Christian Bros.*, No. CIV 09–0885 JB/DJS, 2010 WL 5150718, at *6 (D.N.M. Nov. 3, 1010) ("The party noticing the deposition usually has the right to choose the location.  However, certain ground rules may create obligations or limitations regarding deposition location.  For example, if the party deposed is a plaintiff or its agent, deposition is generally appropriate at the litigation forum.") (quoting 7 J. Moore, et al., Moore's Federal Practice ¶ 30.20[a][b][ii] (3d ed. 1997)).  As Judge Browning has noted, the parties should try to agree upon the location of depositions, but when the parties cannot agree, "the Court should not interfere in the self-executing discovery unless there are exceptional or unusual circumstances." *Resource Associates Grant Writing & Evaluation Services, LLC v. Maberry*, No. CIV 08–0552 JB/LAM, 2009 WL 1311465, at *1 (D.N.M. Jan. 16, 2009).

This is not a case where Copar's principal place of business is out of state.  Nor does requiring a witness to come to Albuquerque create an undue burden.  Assuming, as Defendants have told the United States, Kelly Armstrong will testify in response to the 30(b)(6) deposition regarding Copar's finances, she would not be unduly burdened by travelling to Albuquerque. Indeed, Ms. Armstrong has travelled to Albuquerque for every deposition that has been set there.

Defendants have not provided justification for deviating from the well-established rule that the party setting the deposition chooses its location.

**CONCLUSION**

The United States requests that the Court deny Defendants' Motion for Protective Order, enter an order requiring Copar to offer one or more witnesses prepared to testify regarding the matters set forth in the notices of deposition at the agreed upon locations (Sante Fe and Albuquerque, clarify that the duration limit set forth in Rule 30 applies to each such designated witness, and for such relief as the Court deems just.

Dated this 22nd day of April, 2013.　　　KENNETH J. GONZALES
　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　*electronically filed April 23, 2013*
　　　　　　　　　　　　　　　　　RUTH FUESS KEEGAN
　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　P.O. Box 607
　　　　　　　　　　　　　　　　　Albuquerque, New Mexico 87103
　　　　　　　　　　　　　　　　　(505) 346-7274
　　　　　　　　　　　　　　　　　(505) 346-7296 Fax
　　　　　　　　　　　　　　　　　ruth.f.keegan@usdoj.gov

IGNACIA S. MORENO

Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

ANDREW A. SMITH
Natural Resources Section
c/o United States Attorneys Office
P.O. Box 607
Albuquerque, New Mexico 87103
Phone:  (505) 224-1468
Fax:  (505) 346-7205
andrew.smith@usdoj.gov

DOMINIKA N. TARCZYNSKA
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Phone:  (202) 305-0447
Fax:  (202) 305-0506
dominika.tarczynska@usdoj.gov

**Attorneys for Plaintiff United States**

Of Counsel:

STEVE HATTENBACH
Office of General Counsel
U.S. Department of Agriculture