IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                Civ. No.  09-1201 JP/RLP

COPAR PUMICE COMPANY, INC.,
KELLY ARMSTRONG, RICHARD P. COOK,
SHIRLEY A. COOK, and DEBBIE CANTRUP,

     Defendants.

MEMORANDUM OPINION AND ORDER

In THE UNITED STATES' MOTION FOR LEAVE TO FILE SECOND AMENDED

COMPLAINT TO CONFORM TO THE EVIDENCE (Doc. No. 331) (Motion), Plaintiff the

United States of America (United States) asks the Court for leave to file the SECOND

AMENDED COMPLAINT FOR TRESPASS, CONVERSION, UNJUST ENRICHMENT,

DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF (Mot. Ex. A) to add three

additional theories of liability and a claim for punitive damages, which the United States asserts

are supported by evidence acquired during discovery.  Defendants Copar Pumice Company, Inc.

(Copar), and Kelly Armstrong (Armstrong), Richard P. Cook (Richard Cook), Shirley A. Cook

(Shirley Cook), and Debbie Cantrup (Cantrup) (together Defendants) oppose the Motion.[1]

Under Rule 15 (a) (2), which instructs the Court to allow amended complaints "when justice so

---

[1] *See* RESPONSE TO MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT (Doc. No. 342) (Response); and THE UNITED STATES' REPLY IN SUPPORT
OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO CONFORM
TO THE EVIDENCE (Doc. No. 349) (Reply).

requires," the Court will grant the Motion to allow the United States to add the additional theories of liability and the claim for punitive damages.

## I.  Standard of Review

At this stage in the case, the United States may amend its complaint only with the Court's leave, but "the Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court declared that the mandate in Rule 15(a) "is to be heeded[]" because "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).  However, leave to amend should not be given if a proposed amended complaint would result in an undue delay or if the amendment is offered in bad faith. *Id.*  A court may deny a party's motion to amend if there is evidence that the party has a dilatory motive, the party has repeatedly failed to cure deficiencies by amendments previously allowed, the party's amendment would unduly prejudice the opposing side, or the amendment would be futile, that is, subject to dismissal. *Id.*

## II.  Background

The factual background has been outlined in previous opinions and will be summarized only as necessary for this Motion.  On December 23, 2009, the United States brought this action to recover damages against Copar, and its owners and operators, Richard Cook, Armstrong, Cantrup, and Shirley Cook (the Individual Defendants) for trespass and conversion stemming from Defendants' allegedly illegal operation of El Cajete Mine, a pumice mine located in the Jemez Ranger District of the Santa Fe National Forest.  Copar is owned by Richard Cook's three daughters: Cantrup, Armstrong, and Katherine Fishman.  Richard Cook was at one time Copar's president, but Armstrong is currently the president of Copar.

On July 16, 2010, the United States filed the AMENDED COMPLAINT FOR

TRESPASS, CONVERSION, UNJUST ENRICHMENT, DAMAGES, AND DECLARATORY

AND INJUNCTIVE RELIEF (Doc. No. 22) (Amended Complaint), adding a claim for unjust

enrichment.  In the Amended Complaint, the United States alleged that "Defendants were

authorized to extract and remove only locatable pumice from [El Cajete Mine] for sale to the

stone wash laundry industry." (Am. Compl. ¶ 49.)  Defendants were prohibited from extracting

"common variety" pumice from El Cajete Mine under federal mining law, under the Jemez

National Recreation Area Act of 1993, and under a 2002 Settlement Agreement from previous

litigation between the United States and Copar. (*Id.* ¶ 50.)  In 1994, the United States

Department of the Interior (DOI) determined that pumice was "locatable" for the stonewash

laundry industry only if the pumice was 3/4 of an inch or larger (+ 3/4" pumice) in diameter. (*Id.*

¶ 20.)  Under a 1997 Plan of Operation, Copar was allowed to remove, process, and sell only

locatable pumice from El Cajete Mine. (*Id.* ¶ 21.)  The Plan of Operation required Copar to

stockpile common variety pumice, pumice with a diameter less than 3/4", and use it for

reclamation of the area. (*Id.*)

The United States have alleged that Copar unlawfully removed, processed, and sold

pumice from El Cajete, particularly by crushing +3/4" pumice and selling the pumice for

common variety purposes.  The United States asserted claims against Defendants for trespass on

federal property, conversion of pumice unlawfully extracted from El Cajete, and for unjust

enrichment from selling the pumice for common variety purposes.  Early in the case, the Court

granted summary judgment in favor of Defendants and held that the United States is legally

precluded from asserting its claims against Defendants for any mining activity that occurred

prior to April 3, 2006. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 43).  Thus, the

3

United States may recover on its claims for illegal mining, processing, and sales activities that occurred after April 3, 2006.

The United States correctly asserts that the discovery of relevant evidence from Defendants has been arduous and characterized by suspicion and conflict.  Chief Magistrate Judge Karen B. Molzen recognized this in an Order issued October 5, 2012:

> It has not gone unnoticed that Defendants have opposed nearly every discovery request that has been made in this case, . . . they have refused to even negotiate when the United States has offered to limit its requests . . . .  While this tactic may successfully delay production of documents, it does not often succeed in preventing production of documents altogether.  In cases like this, where Defendants' initial representations are continually proven suspect, the price of the delay strategy is Defendants' and their counsel's credibility with the Court.

ORDER ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER *(Doc. No. 189)* (Doc. No. 287) (October 2012 Order).  Prior to this statement, Judge Molzen ruled on numerous discovery issues: (1) three motions to compel filed by the United States (Doc. Nos. 55, 86, 218); (2) one motion to enforce the Court's orders filed by the United States (Doc. No. 129); (3) four motions for protective orders filed by Defendants (Doc. Nos. 87, 112, and 132); and (4) one motion to quash subpoena filed by Defendants (Doc. No. 280).  As recently as the last week of May, 2013, Defendants produced approximately 1400 pages of documents in response to the United States' letter regarding discovery disputes that remained unresolved at that time.  (Mot. Ex. B.)  In the cover letter sent with the documents, Defendants' counsel noted that if any additional documents responsive to the United States' discovery requests were found, "they will be forwarded . . ." (Ex. B at 2.)  In addition to document production and written discovery, several depositions were taken between October 2012 and May 2013.

III.  Discussion

The United States contends that it has learned through the discovery process that the

4

Individual Defendants have created and used numerous partnerships and corporate entities (Affiliated Entities) to conduct business and to channel funds between themselves and the Affiliated Entities.  The United States alleges that the Individual Defendants operated these Affiliated Entities as "one joint family enterprise, transferring money, equipment and employees freely between these entities without respect for corporate formalities." (Mot. at 1.)  In the proposed Second Amended Complaint (Mot. Ex. A.), the United States seeks to add allegations concerning the Affiliated Entities and their relationship to Copar, the Individual Defendants, and El Cajete Mine.  According to the United States, recently acquired evidence shows that Defendants are individually liable for activities conducted through Copar and these Affiliated Entities under the theory of joint enterprise, as part of a civil conspiracy, or under the alter ego theory.  The proposed Second Amended Complaint (Mot. Ex. A) alleges that the Individual Defendants and Copar were engaged in a joint enterprise to profit from the violation of the mining laws and regulations and the agreements with the United States concerning the operation of El Cajete Mine.  The United States further claims that the violations engaged in by Defendants were pursuant to a civil conspiracy and that the Individual Defendants used Copar and other Affiliated Entities as alter egos by failing to recognize the separate existence of the various entities doing business related to El Cajete Mine.  Further, the United States had added a claim that Defendants are jointly and severally liable for punitive damages based on Defendants' intentional and willful violations of the law and the relevant agreements.

The United States submits examples of the information it has recently acquired and their relevance to its Motion.  Early in this litigation, Defendants consistently asserted that Copar's connection with some of the Affiliated Entities, particularly DAK Partnership, Espanola Transit Mix, Cooks Home Center, and Valley National Bank, involved only minor activities such as the

sharing of office space or equipment without formal leases or payments.  The United States

notes that Copar initially produced its general financial ledgers, but those ledgers were redacted

in a manner that was not readily discernible to the United States.  In late 2012, Copar produced

unredacted financial ledgers, which the United States contends show transactions much more

extensive than previously disclosed.  The United States asserts that it now has information about

transactions between Copar and the Affiliated Entities in excess of one million dollars.

Next, the United States points out that in response to the United States' discovery

requests Defendants originally identified only three businesses that they currently or previously

owned or managed.  After the United States moved to compel and the Court ordered Defendants

to disclose all business that they own or manage, Defendants identified a total of 17 business

entities.  However, the United States asserts it has recently discovered over 50 business entities

that Defendants currently own or manage.  At his deposition on April 9, 2013, Richard Cook

revealed the existence of four additional entities that he owned or managed.

The United States further contends that Defendants originally failed to disclose the extent

to which Copar and the Affiliated Entities were financially intertwined.  For example, in

response to discovery requests, Defendants initially stated that Copar used office space inside of

the Cooks Home Center; that Copar located its processing facility on land owned by DAK

Partnership; and that Copar shared equipment with Espanola Transit Mix.  Following orders

entered on April 23 and May 2, 2012, Defendants disclosed that Copar either loaned money to or

borrowed money from several additional entities and two of the Individual Defendants: Cook's

Home Center, Cook Limited Partnership, Cook Partnership, El Llano Company, Espanola

Mercantile, Rico Paving, Richard Cook, Armstrong, C&W Land Development, and Valley

National Bank.  On February 21, 2013, Defendants provided a list of compensation and loans

among Copar, the Individual Defendants, and the Affiliated Entities; however, apparently there are no written agreements memorializing the loans. (*See* Mot. Ex. D.)  In his April 9, 2013 deposition, Richard Cook disclosed for the first time that Espanola Transit Mix purchased pumice from Copar and used the pumice to make concrete.  (Mot. Ex. C Cook Dep. 210:13-211:3.)

Finally, the United States points out that Richard Cook originally stated in an affidavit supporting Copar's first motion for summary judgment (Doc. No. 79 Ex. 5) that he was president of Copar until the mid 1980's and that he had no role in El Cajete mining operations. (Richard Cook Aff. ¶ 1.)  During his April 9, 2013 deposition, Richard Cook admitted that he was president of Copar until at least 1991 and that his statement that he was not involved in Copar's El Cajete mining operations was inaccurate.  (Mot. Ex. C Cook Dep. 232:2-17; 236:2-15.)   On February 26, 2013, Armstrong testified in her deposition that Richard Cook has always been authorized to sign Copar's checks. (Mot. Ex. E Armstrong Dep. 86:24-87:12.)  Based on this recently acquired information, the United States contends that at least two Defendants, Richard Cook and Armstrong, were operating Copar and many other Affiliated Entities as a family enterprise without respect for corporate formalities or divisions.  Significantly, the United States alleges that the Individual Defendants have all profited directly or indirectly from Copar's illegal mining operation through their association with the Affiliated Entities.  (*See* Sec. Am. Compl. ¶¶ 62-68.)

Defendants oppose the Motion contending that the Untied States is responsible in large part for the delay in discovery.  According to Defendants, the Untied States unreasonably failed to request discovery until fourteen months after this case was filed.  The United States responds that it deferred conducting initial discovery until after there was a ruling on the Defendants'

motion to dismiss, filed on July 2, 2010.  The Court ruled on November 12, 2010 and limited the United States' claims to Copar's activities after April 3, 2006.  After that ruling, discovery began in earnest.

Defendants further assert that the Motion is untimely because most of the information was known to the United States when the original complaint was filed.  Defendants point to the United States' allegations that the Defendants began their use of the Affiliated Entities as early as July 1998, and say this was evidenced in meetings, correspondence and statements to the Forest Service from 2002-2007.  According to Defendants, as early as 1998, the United States knew that Copar was one of several Cook family businesses, based upon Mr. Cook's testimony in the 1998 mineral contest.  Defendants, however, admit that the information regarding the specific amount of the loans and other transactions between Copar, Armstrong and the other entities is new.  However, Defendants maintain that this information was available to the United States several months ago, and the United States added to the delay by waiting several months to file the Motion.

Furthermore, Defendants contend that loans between family members and family business entities is not *per se* improper and is not a legally sufficient basis on which to disregard these corporate entities under the alter ego theory.  Defendants assert that it is common knowledge that most businesses utilize loans and financing, and it is not unusual for family businesses to borrow money from family members.

According to Defendants, the United States improperly delayed filing the Motion without adequate explanation, and the United States improperly waited to file the Motion until shortly before the close of discovery, which has been recently extended to October 1, 2013.  *See* FOURTH AMENDED SCHEDULING ORDER (Doc. No. 340).  Defendants assert that as a

consequence, the United States should not be able to amend its complaint this late in the process to add theories about which it has known for several months, if not years.

The United States counters that even though prior proceedings revealed the existence of some family-owned entities, it was not until recently that it learned the extent of the financial dealings between the Defendants and the numerous Affiliated Entities that have come to light. The United States further contends that it was not appropriate to amend its complaint in piecemeal fashion as financial information from Defendants slowly became available, which was produced only as a result of orders to compel from Magistrate Judge Molzen.  Instead, the United States waited until the documents were produced and depositions of the Individual Defendants were taken to seek leave to amend.  The United States points out that it went ahead with depositions despite the fact that Defendants did not produce Cantrup's bank statements until June 14, 2013, eight months after her deposition on October 12, 2012.  Similarly, Shirley Cook's bank statements were produced on March 13, 2013, over four months after her October 12, 2012 deposition.  In like fashion, Defendant continued producing responsive documents even after Richard Cook's and Armstrong's depositions were held in April 2013.  (*See* Mot. Ex. B Correspondence from Defendants' counsel dated May 31, 2013 transmitting documents including emails and Copar's corporate minutes.)  The United States correctly contends that it should not be required to plead theories of liability based on speculation.  To summarize, the United States contends that it filed the Motion within a reasonable time after it obtained information showing the extent of the financial and business interrelationship between Copar and the Affiliated Entities.

While undue delay is one reason a court may deny a motion to amend, "lateness does not of itself justify the denial of an amendment." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205

(10th Cir. 2006).  "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action."  *Id.*  Significantly, the Second Amended Complaint does not add new claims; it contains the original three claims: trespass, conversion, and unjust enrichment. The  Second Amended Complaint includes additional bases on which to hold one or more of the Individual Defendants personally liable on these claims.  The punitive damages claim adds allegations that the misconduct already alleged was done intentionally or willfully.

The Court finds that the United States did not unduly delay in seeking leave to amend its Amended Complaint.  The United States convincingly argues that it did not know the extent of the interrelatedness of Copar, the Individual Defendants, and the Affiliated Entities until it received documents and took Defendants' deposition testimony in the first few months of this year.  The United States convinces the Court that it only recently learned from letters written by Copar's former attorneys and from Armstrong's deposition testimony that Copar continued crushing and selling pumice even after representing to the Forest Service that it had stopped this activity.  Notably, the United States sought information about businesses owned and controlled by Defendants and the relationships among those businesses as early as February 11, 2011 by way of written interrogatories and requests for production submitted to each Defendant.  The United States received eight separate collections of documents from Defendants over the course of the next two years.  And, Defendants recently produced 1400 additional pages of documents and offered to send additional documents when they are located.  Moreover, despite the Court's October 5, 2012 Order requiring Defendants to produce a list of loans and compensation between Copar, Defendants, and the Affiliated Entities, the list was not produced until February 21, 2013.  During Richard Cook's April 9, 2013 deposition, he testified that Espanola Transit Mix purchased pumice from Copar, a significant piece of information not previously disclosed.

10

(Richard Cook Dep. 210:13-211:3.)

The United States has described the protracted discovery process in this lawsuit and the reason for the timing of the Motion.  Just as Defendants have the right under the rules of civil procedure to oppose certain requests for discovery, the United States has the right to amend its complaint in light of new information gained through discovery if it supports the proposed amendment and explains the delay in seeking leave to amend. *Smith v. Argyle*, No. 10–CV–01268, 2012 WL 5330981, *1-2 (D. Utah Oct. 29, 2012) (unreported decision) (granting leave to amend based on argument that amendment was necessary due to new information revealed during discovery).  The United States has fulfilled its obligation in that regard. *See Koch v. Koch Industries*, 127 F.R.D. 206, 211 (D. Kan. 1989) ("[t]here is no undue delay in seeking leave to amend if [parties] acquire knowledge of the facts behind the new claim only through recent discovery and after conducting a reasonable investigation of that information.").

In addition, Defendants have not shown that granting leave to amend will cause them undue prejudice in preparing their defense.  *Minter*, 451 F.3d at 1208 (noting that prejudice is shown when amended complaint asserts claims based on new subject matter and new factual issues).  The new allegations in the Second Amended Complaint do not "change the basic theory, or rely on different underlying facts." *Id.*  All of the new allegations arise out of the same conduct that was the basis for the Amended Complaint, and the Second Amended Complaint merely adds three new theories under which the Individual Defendants may be held liable jointly with Copar for trespass, conversion, and/or unjust enrichment.  *See, e.g., Beavers v. Victorian*, No. CIV–11–1442–D, 2013 WL 3424174, * 3 (W. D. Okla. July 8, 2013) (slip op.) (describing legal theory of joint enterprise as a means of imposing liability on an individual defendant for the alleged conduct of any participant in a business enterprise); *Bettis v. Hall*, No.

11

10–2457–JAR, 2011 WL 1430327, * 2 (D. Kan Ap. 14, 2011) (unreported decision) (describing

alter ego theory of liability as a theory under which an individual is liable for a corporation's

debts if the individual uses the corporation to conduct personal business); and *Pedroza v. Lomas*

*Auto Mall,* 600 F. Supp. 2d 1162, 1169 (D. N.M. 2009) (noting that civil conspiracy is not a

separate claim but is a "collection device designed to hold one party liable for the actions of

another party. . . .").  Furthermore, since late 2011 the United States has sought discovery related

to the manner in which money flowed from Copar to the Individual Defendants, using the

Affiliated Entities as conduits in an effort to obtain evidence that the Individual Defendants can

be individually liable for Copar's unlawful mining operations.  *See* THE UNITED STATES'

RULE 56(d) RESPONSE TO DEFENDANTS CANTRUP, R. COOK, AND S. COOK'S

MOTION FOR SUMMARY JUDGMENT (Doc. No. 85) at 10, 12 (arguing that more discovery

was necessary under Fed. R. Civ. P. 56(d) and noting that Defendants had failed to respond to

discovery requests for information regarding related entities owned by Individual Defendants

which would allow the United States to track flow of money from Copar's mining operations).

Having now received that information, the United States should be allowed to seek leave to add

allegations related to that information.

    Finally, the United States successfully argues that granting leave to file the Second

Amended Complaint would not be futile because it would not be subject to dismissal under Rule

12.  The Court is mindful that the issue in granting leave to amend is not whether the United

States will prevail on its new theories, but whether the United States is entitled to offer evidence

to support the theories. *Home Design Services, Inc. v. Bohnenkamp Const., Inc.*, No.

08–cv–02391, 2009 WL 2055176, * 1 (D. Colo July 10, 2009) (unreported decision) (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  Defendants have failed to show that

when viewed in the light favorable to the United States, the new theories of liability asserted in the Second Amended Complaint would be subject to dismissal.  As mentioned, there are no new claims and the allegations are based on the same basic factual scenarios.

The Court notes that on July 23, 2013, while the Motion was pending, Defendants filed a MOTION FOR SUMMARY JUDGMENT (Doc. No. 357) requesting dismissal of the claims in the Amended Complaint (Doc. No. 22).  Because the Second Amended Complaint, which the Court will permit the United States to file, asserts the same claims that were alleged in the Amended Complaint, the Court will treat the MOTION FOR SUMMARY JUDGMENT (Doc. No. 357) as being directed against the Second Amended Complaint.

IT IS ORDERED that THE UNITED STATES' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO CONFORM TO THE EVIDENCE (Doc. No. 331) is granted.

_____

SENIOR UNITED STATES DISTRICT JUDGE