## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**                                      **Civ. No.  09-1201 JP/KBM**

**COPAR PUMICE COMPANY, INC.,**
**KELLY ARMSTRONG, RICHARD P. COOK,**
**SHIRLEY A. COOK, and DEBBIE CANTRUP,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

In MOUNTAIN STATES MUTUAL CASUALTY COMPANY'S MOTION FOR

LEAVE TO INTERVENE (Doc. No. 345) (Motion), Mountain States Mutual Casualty Company

(Mountain States) seeks leave to file a complaint in intervention (Mot. Ex. 1) because

Defendants Copar Pumice Company, Inc. (Copar), Kelly Armstrong (Armstrong), Richard P.

Cook (Richard Cook), Shirley A. Cook (S. Cook), and Debbie Cantrup (Cantrup) have

demanded that Mountain States indemnify them and provide them with a defense in this action.

Mountain States wants a declaratory judgment that the insurance policies issued by Mountain

States to Defendants, or to entities affiliated with Defendants, provide no coverage for any

liability that may be imposed in this case.

In its NOTICE OF EXTENSION TO RESPOND TO MOTION TO INTERVENE (Doc.

No. 352) (Notice), Mountain States indicates that while Defendants say they will not oppose

Mountain States' Motion, discussions are ongoing among all parties regarding what terms, if

any, will apply if the Motion is granted.  The Notice also states that all parties have agreed to a

two week extension of the deadline for Plaintiff United States of America (United States) and

Defendants to respond to the Motion.  On July 29, 2013, the United States responded to the

Motion in its NOTICE OF UNITED STATES' POSITION REGARDING MOUNTAIN

STATES MUTUAL CASUALTY COMPANY'S JUNE 28, 2013 "MOTION FOR LEAVE TO

INTERVENE" [ECF NO. 345] (Doc. No. 360) (Response).  In its Response, the United States

informs the Court that it learned from counsel for Mountain States that the undersigned "may

have represented Mountain States[]" prior to the undersigned's appointment as a United States

District Judge. (Resp. at 1.)  Nevertheless, the United States asserts that it does not believe the

undersigned's connection with Mountain States or its counsel "constitutes a conflict that would

necessitate . . . recusal."  (*Id.*)  The United States avers, however, that if the undersigned believes

recusal might be necessary if Mountain States were allowed to intervene, then the United States

would like to be allowed to address the issues related to intervention and recusal. (*Id.* at 2.)

On August 2, 2013, Defendants Copar and Armstrong filed their NON-OPPOSITION TO

MOUNTAIN STATES' MOTION TO INTERVENE (Doc. No. 372), and on the same date,

Defendants Richard Cook, S. Cook, and Cantrup filed their RESPONSE TO MOTION TO

INTERVENE (Doc. No. 373), indicating non-opposition to the Motion.

In its REPLY IN SUPPORT OF MOTION TO INTERVENE [ECF No. 345] (Doc. No.

374) (Reply), Mountain States noted all Defendants' non-opposition to the Motion.  Mountain

States concurred with the United States' position that no basis existed to warrant recusal by the

undersigned.  Mountain States further asserted that its proposed intervention would not conflict

with timely resolution of the pending issues between the parties because discovery, motion

practice, and trial could continue as presently scheduled.  (Reply at 1.)

The Court determines that under Fed. R. Civ. P. 24 Mountain States should not be

allowed to intervene in this case; therefore, the Court will deny the Motion.

### I.  Background Relevant to the Motion

The United States' claims relate to Copar's operation of El Cajete Mine in the Jemez

Mountains located in the Santa Fe National Forest.  The United States alleges that Copar, which

was operated without regard to its corporate form by the individual Defendants, illegally

extracted, processed, and sold pumice for common variety purposes from April 3, 2006 to the

time El Cajete Mine was closed.  According to the United States, Copar was only authorized by

law and by agreement to extract, process, and sell "locatable" pumice that was larger than 3/4" in

diameter, and the pumice must have been extracted, processed, and sold to the stonewash

laundry industry.

In 2010, Defendants submitted an initial request for defense and indemnity to Mountain

States. (Doc. No. 345, Ex. B.) On June 11, 2010, counsel for Mountain States wrote defense

counsel in response to Defendants' request for defense and indemnity with respect to this

lawsuit. (*Id.*, Ex. A.) Mountain States' letter set out pertinent portions of the insurance policies

and its position why it owed no duty to defend or indemnify Defendants from the claims brought

by the United States in this lawsuit. (*Id.*) On October 18, 2011, defense counsel again wrote

Mountain States requesting a defense and indemnity with respect to an Amended Complaint

filed on July 16, 2010. (*See id.*, Ex. B at 17.) On October 26, 2011, counsel for Mountain States

wrote a second response letter to Defendants, stating that the allegations in the Amended

Complaint remained outside the coverage of Mountain States' policy. (Doc. No. 345, Ex. B at

16.)  Thus, Mountain States was aware of this lawsuit, the claims, and Defendants' requests for a

defense and indemnity as early as June 2010 and October 2011.

On May 23, 2013, Defendants sent a third letter to Mountain States again requesting a

defense and indemnification.  Defendant's request anticipated the United States seeking leave to

file a second amended complaint, which added three theories under which the individually-

named Defendants, Armstrong, Richard Cook, S. Cook, and Cantrup (Individual Defendants),

could be jointly and severally liable for claims of trespass, conversion and/or unjust enrichment.[1]

Mountain States argues that its insurance policy issued to Espanola Mercantile Co.

(Policy CPP 0065909 from December 31, 1999 to December 31, 2009) and its insurance policy

issued to Copar Pumice Inc./Espanola Mercantile Co. DBA from December 21, 2010 to the

present time (Policy CPP 0128232), provide no coverage of Defendants' liability for the United

States' claims in this case. (Doc. 345.)  Mountain States asks to intervene under both the

mandatory intervention provision, Fed. R. Civ. P. 24 (a)(2), and under the permissive

intervention provision, Fed. R. Civ. P. 24(b)(1)(B).  Mountain States seeks a declaration from

this Court that the insurance policies at issue provide no coverage with respect to the claims.

## II.  Pertinent Legal Standards

Rule 24 governs intervention in an ongoing lawsuit and provides,

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[1] The Court has granted the United States leave to amend. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 364).

(b) Permissive Intervention.

      (1) In General. On timely motion, the court may permit anyone to intervene who:
        . . .
        (B) has a claim or defense that shares with the main action a common question of law or fact.
  . . .

      (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

Whether seeking to intervene as a matter of right or permissively, Rule 24 requires that the motion be timely. *Nat'l Ass'n for Advancement of Colored People (NAACP) v. New York*, 413 U.S. 345, 365-66 (1973) (regardless of whether intervention is premised on an unconditional or permissive right, the application must be timely; if untimely, intervention must be denied); *see Assoc. Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (if motion for intervention is not timely, court need not address other factors that enter into an intervention analysis).

Rule 24 does not define timeliness. However, the Court enjoys substantial discretion in determining the timeliness of a motion to intervene under either Rule 24(a) or Rule 24(b). *See, e.g.,* Backer-McKee, Janssen, and Corr, Federal Civil Rules Handbook (2013 ed.) at 707, 712 ("statutory intervention is still subject to a determination of timeliness, over which the district court enjoys substantial discretion") (citing *Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir. 1998), *cert. denied*, 526 U.S. 1158 (1999)). *See also R&G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 584 F.3d 1, 8 (1st Cir. 2009) (timeliness requirement, *albeit* less strictly applied in motions to intervene as of right, still is a matter of appreciable discretion; timeliness requirement still retains "considerable bite"); *Canadian Nat'l. Ry. Co. v. Montreal, Maine & Atl.*

*Ry., Inc.*, 272 F.R.D. 44, 45 (D. Me. 2010) ("District courts have substantial discretion to grant

intervention under either subsection (a) or (b)").

The Court recognizes that the Tenth Circuit Court of Appeals follows "a somewhat

liberal line in allowing intervention." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249

(10th Cir. 2001) (citation omitted). Notwithstanding this somewhat liberal approach for

determining intervention, "the application of Rule 24 to particular motions is not always as

generous as such general statements might suggest." Federal Civil Rules Handbook, at 707

(citations omitted). The editors of Federal Practice and Procedure similarly state:

> These statements [concerning liberal construction of intervention]
> should not be understood . . . as meaning that every possible doubt
> is to be resolved in favor of allowing intervention whenever it is
> sought. Liberality "does not equate with rights of indiscriminate
> intervention" and the rule continues to set bounds that must be
> observed.

7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1904 at 269 (3d ed.

2007) (citations omitted).

In *Clinton*, the Tenth Circuit set forth the pertinent factors to consider in determining the

timeliness of a Rule 24 motion to intervene.

> The timeliness of a motion to intervene is assessed "in light of all the
> circumstances, including the length of time since the applicant knew
> of his interest in the case, prejudice to the existing parties, prejudice
> to the applicant, and the existence of any unusual circumstances . . .
> ." "The analysis is contextual; absolute measures of timeliness
> should be ignored. . . ." "The requirement of timeliness is not a tool
> of retribution to punish the tardy would-be intervenor, but rather a
> guard against prejudicing the original parties by the failure to apply
> sooner. Federal courts should allow intervention 'where no one
> would be hurt and greater justice could be attained.' "

*Clinton*, 255 F.3d at 1250 (internal citations omitted); *NAACP*, 413 U.S. at 365-66 (timeliness is

determined from all the circumstances). In *Clinton*, the Tenth Circuit ultimately reversed the

district court's denial of intervention, reasoning in part, that the case was not ready for resolu-

tion, no scheduling order was issued, no trial date was set, and no cut-off date for motions was

set.  *Id.* at 1250-51.

In *Okla. ex rel. Edmondson v. Tyson Foods*, 619 F.3d 1223 (10th Cir. 2010), the Tenth

Circuit recognized as particularly important the length of time the movant knew of its need to

intervene.  *Tyson Foods*, 619 F.3d at 1232-33.  "When the applicant appears to have been aware

of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant

to allow intervention."  *Id.* (citation omitted).  The timeliness inquiry focuses on how diligently

the applicant acted once it received notice of an impending threat or need to intervene.

Other circuit courts provide similar guidance regarding determinations of the timeliness

of a motion to intervene.  For example, the Court of Appeals for the First Circuit advises courts

to weigh four factors:  length of delay in seeking intervention, prejudicial impact of such delay

on existing parties, prejudice to intervenor if motion is denied, and other factors affecting

fairness in an individual case.  Stated differently, the Court examines the progress of a case, the

length of time the intervenor knew its interest was imperiled, the foreseeable prejudice to

existing parties if intervention is granted or to the intervenor if denied, and any idiosyncratic

circumstances that weigh for or against intervention.  *Geiger v. Foley Hoag LLP Ret. Plan*, 521

F.3d 60, 65 (1st Cir. 2008).

The Courts of Appeal for the Fifth, Seventh and Ninth Circuits also supply instruction

regarding timeliness of intervention.  Because Rule 24 does not provide a specific deadline for

intervention, the question of timeliness is determined from all the circumstances.  *Heaton v.*

*Monogram Credit Bank of Georgia*, 297 F.3d 416, 423 (5th Cir. 2002), *reh'g denied*, 48 F.

App'x  482 (5th Cir. Aug, 2002).  Any substantial lapse of time weighs heavily against

intervention.  *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996).  The Seventh

Circuit advised that timeliness means intervenor applicant must "act with dispatch."  *Atl. Mut.*

*Ins. Co. v. Nw. Airlines, Inc.*, 24 F.3d 958, 961 (7th Cir. 1994).

The Eighth Circuit emphasizes that it denies intervention when no adequate explanation

is offered for the delay in moving to intervene.  *See Am. Civil Liberties Union of Minn. v. Tarek*

*ibn Ziyad Acad.*, 643 F.3d 1088, 1094-95 (8th Cir. 2011) (even where court finds no prejudice

would result to the existing parties, the progress of the litigation and the intervenors' knowledge

of it permitted the district court to find the motion untimely).  Moreover, a would-be intervenor's

failure to justify its delay in light of its prior knowledge of the case may warrant denial of

intervention.  *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir.

2011), *cert. denied*, 133 S.Ct. 198 (2012).

## III.   Discussion

### A.   *Timeliness of Intervention*

The Court determines that Mountain States' motion to intervene is not timely.[2]  This case

has been pending since December 2009. (Doc. No. 1.)  As early as June 2010, Mountain States

knew of Defendants' request that it provide a defense and indemnification in relation to claims in

this lawsuit.  In late 2011, Defendants again requested that Mountain States provide a defense

and indemnity with respect to claims by the United States.  Mountain States delayed until June

---

[2]Mountain States primarily argued that it met all elements of either intervention of right or permissive intervention but only briefly addressed the timeliness of its motion.  Because the Court decides this motion on grounds of timeliness and prejudice, it does not analyze other requirements under Rule 24(a) and (b).  If, however, Mountain States was greatly concerned that the existing parties would not adequately represent its interest in this lawsuit, it could have moved to intervene three years ago when it first knew of a request to defend and indemnify.

28, 2013, before filing the motion to intervene, in other words, at least three years after it knew

about the requests for a defense and indemnity.

Mountain States explains that it filed the motion to intervene in June 2013, based on

Defendants' third letter to Mountain States on May 23, 2013, again demanding a defense and

indemnification.  Mountain States further states that Defendants submitted the third renewed

demand for defense in anticipation that the United States would seek leave to file a second

amended complaint, that the United States did file on June 7, 2013. (Doc. No. 331.)  According

to Mountain States, it timely filed the motion to intervene within three weeks after the United

States requested leave to amend the complaint a second time.  In addition, Mountain States avers

that the United States' intention to amend the complaint arose from information gleaned in April

and May 2013 depositions.  Therefore, based on the United States' June 2013 request to amend

the complaint, along with a later trial setting of January 2014 (Doc. No. 273), Mountain States

argues its motion should be considered timely.

Mountain States did not expressly state that the Second Amended Complaint raised new

claims that alerted it, for the first time, to the need for intervention.  However, that may be an

inference from Mountain States' argument that the proposed amendment was based on very

recent, new information from deposition testimony.  The Court finds any such argument

unpersuasive.  In its previous decision allowing amendment, the Court advised that "[t]he new

allegations in the Second Amended Complaint do not 'change the basic theory, or rely on

different underlying facts.' "  Further, "[a]ll of the new allegations arise out of the same

conduct that was the basis for the Amended Complaint, and the Second Amended Complaint

merely adds three new theories under which the Individual Defendants may be held liable jointly

with Copar for trespass, conversion, and/or unjust enrichment." (Doc. No. 364 at 11) (citation

omitted).  It is clear that in 2010, Defendants placed Mountain States on notice of its requests for

a defense and indemnity concerning the same basic theories and facts asserted by Plaintiff.

The Court has reviewed the timeliness of this motion with respect to all of the

circumstances of this litigation, not just the timing of the United States' last request for leave to

amend the complaint or Defendants' third renewed request for a defense.  The Court has also

considered when Mountain States first knew of its possible interest in this litigation.  This case

has suffered repeated delays over a significant period of years.  Four amended scheduling orders

have been entered allowing various extensions of deadlines.  (Doc. No. 340.)  The pretrial order

must be filed with the Court by November 13, 2013, and the Court will conduct a pretrial

conference on December 27, 2013.  (Doc. Nos. 62, 270.)  The January 7, 2014 trial setting is

only four months away and is firm.

Based on the circumstances of this case, the Court is convinced that intervention, at this

late date, will further delay the proceeding.  Moreover, Mountain States provided no explanation

for its delay in bringing a motion to intervene when it knew of Defendants' requests for a

defense and indemnity as early as June 2010.  The Court concludes that Mountain States did not

act diligently in bringing its motion to intervene three years after it first knew of demands for a

defense and indemnity in this lawsuit.  These factors all favor a finding that Mountain States'

motion to intervene is untimely.

### B.      Prejudice to Existing Parties or Proposed Intervenor

Under the timeliness inquiry, the Court also examines potential prejudice to the existing

parties should it allow intervention, along with possible prejudice to the would-be intervenor if it

denies intervention.  The existing parties do not oppose Mountain States' request to intervene.

However, intervention almost certainly will cause delay through further briefing of additional issues. Moreover, if the Court permits intervention, it is likely that it will have to postpone the January 7, 2014 trial setting. Thus, in light of the circumstances, where this case has been pending for almost four years and there is a trial setting in the near future, the Court concludes that the existing parties will be prejudiced by foreseeable delay in the case.

Moreover, the Court determines that denial of the motion to intervene will not cause significant prejudice to Mountain States because it may file a separate declaratory judgment action to determine its duty to defend and indemnify as needed. *See, e.g., Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.,* 529 F.3d 916 (10th Cir. 2008) (insurer brought separate declaratory judgment action seeking determination on duty to defend or indemnify). The Court does not dispute Mountain States' possible interest in this lawsuit, but it had that interest as of June 2010, and did not act expeditiously by seeking leave to intervene.

Notwithstanding the Tenth Circuit's "somewhat liberal" views in permitting intervention, the Court, in its substantial discretion, finds that allowing intervention in this longstanding, much delayed case would amount to recognizing a right to indiscriminate intervention. This, the Court declines to do. Thus, whether analyzed under Rule 24(a) or (b), the Court determines that the motion to intervene is untimely.

### C. Unusual Circumstances

The Court does not find the presence of any "idiosyncratic circumstances" that weigh for or against intervention. However, the parties raised the possibility of a conflict of interest for the undersigned Senior District Court Judge should the Court permit intervention. The Court need not address this matter since it will deny intervention. However, it observes that a court may exercise its discretion to rule on intervention prior to considering whether to recuse if

11

intervention is allowed.  *See Stoddard v. Ling-Temco-Vought, Inc.*, 513 F. Supp. 314, 332 (C.D.

Cal. 1980) (noting that the prior district judge ruled on a contested motion to intervene and then

recused himself from the consolidated cases).[3]

IT IS ORDERED that MOUNTAIN STATES MUTUAL CASUALTY COMPANY'S

MOTION FOR LEAVE TO INTERVENE (Doc. No. 345) is denied.


_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Since the Court has determined that intervention is not warranted, the Court need not reach the issue obliquely raised by the United States in its Response of whether the undersigned has a conflict of interest having represented Mountain States 25 years ago and having an acquaintance with Mountain States' counsel.